**Manuel AGROMAYOR, Plaintiff,**

v.

**Severo COLBERG, Defendant.**

**Civ. No. 83–0980.**

United States District Court,
D. Puerto Rico.

Oct. 13, 1983.

**940**

Harvey B. Nachman, Santurce, P.R., for plaintiff.

Marcos A. Ramirez Lavandro, Ramirez & Ramirez, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

TORRUELLA, Chief Judge.

This action for damages under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3 & 4) is before us on Defendant's Motion to Dismiss, which is opposed by the Plaintiff.

The facts alleged in the complaint are as follows:

Plaintiff Manuel Agromayor ("Agromayor"), a journalist and member of the New Progressive Party, was offered employment as a Press Official attached to the office of Rep. José Granados Navedo, Minority Leader of the House of Representatives of the Commonwealth of Puerto Rico. The contract was submitted to Defendant Severo Colberg ("Colberg"), Speaker of the above mentioned legislative body, for his signature.[1] Colberg refused to sign the contract, allegedly stating that he could not accept Agromayor as an employee of the House because of what he had written in an article for the newspaper El Mundo, and because he was not a Puerto Rican. Agromayor claims that Colberg, using his position as Speaker, under color of authority and law, has acted to deny and/or infringe upon various constitutional rights guaranteed to the Plaintiff, and, therefore, he seeks damages before us pursuant to 42 U.S.C. § 1983.

Defendant moves for dismissal on the grounds that: (1) the suit against Colberg is in his official capacity and is therefore barred by the Eleventh Amendment, (2) Plaintiff has failed to join an indispensible party and (3) Defendant is absolutely immune from such an action on the basis of the common law immunity for state legislators. These arguments warrant our careful consideration.

### I

The Motion to dismiss alleges that Colberg is being sued in his official capacity and that the suit is therefore barred by the Eleventh Amendment. In reading the complaint regarding this issue we find the

---

1. According to the complaint, pursuant to Rule VII of the House of Representatives, the Speaker will appoint the employees of the House.

wording to be somewhat ambiguous: At paragraph 9, Plaintiff states "At all times herein mentioned, the defendant Severo Colberg was the President (Speaker) of the House of Representatives of the Commonwealth of Puerto Rico." At paragraph 20 he states: "At all times herein mentioned, the defendant was acting in his capacity as President of the House .... and under color of law and Authority." However, the caption is addressed to "Severo Colberg, Defendant." It does not mention his official capacity. Likewise, in his motion in opposition to dismiss, Agromayor states specifically that the suit is against Colberg in his individual capacity for acts that he performed under color of law. On a motion to dismiss, the complaint is to be liberally construed. *Lavoie v. Bigwood,* 457 F.2d 7 (1st Cir., 1973). Plaintiff must be granted the benefit of all inferences that can be derived from the facts. *Schuler v. U.S.,* 617 F.2d 605 (C.A.D.C.1979). The facts and allegations set forth in the complaint must be viewed in the light most favorable to the Plaintiff. *Harper v. Cserr,* 544 F.2d 1121 (1st Cir.1976). That Agromayor is suing Colberg in his individual capacity can be reasonably inferred from the facts in the complaint and said will be the view taken by this Court of this action. Such an interpretation makes it unnecessary for us to determine whether or not a suit against Colberg in his official capacity is barred by the Eleventh Amendment.

## II

■ Colberg argues that, under Puerto Rico law, the "community property estate" or conjugal partnership composed of himself and his wife is the owner of property which could be directly affected by the disposition of this case. Alleging that complete relief cannot be afforded in the absence of the conjugal partnership, he asks for dismissal for failure to join an indispensable party under F.R.Civ.P. 19(a). We would remind the Defendant that the basis of this case is not diversity of citizenship, but a federal question based on violation of civil rights caused by the alleged deprivation of employment and property for rea-

son of political affiliation and national origin. 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3 & 4). "A federal court sitting on a non-diversity case such as this does not sit as a local tribunal. In some cases it may see fit, for special reasons, to give the law of a particular state highly persuasive or even controlling effect, but in the last analysis its decision turns upon the law of the United States, not that of any state." *Gannet v. First National State Bank of New Jersey,* 546 F.2d 1072 (3rd Cir., 1976) *cert. denied* 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977); *Three Rivers Motors Co. v. Ford Motor Company,* 522 F.2d 885 (3rd Cir.1975); *United States v. H.E. Crain,* 589 F.2d 996 (9th Cir., 1979); *D'Oench, Duhme & Co. v. F.D.I.C.,* 315 U.S. 447, 471–472, 62 S.Ct. 676, 685–86, 86 L.Ed. 956 (1942) (Jackson, J., concurring). The entity of the conjugal partnership is created by the substantive law of Puerto Rico, namely, the Civil Code of Puerto Rico, 31 L.P.R.A. Chap. 273. It is not an entity of the federal law. Under federal law, the only alleged violator of Plaintiff's rights is Defendant Colberg, not the conjugal partnership to which he belongs, or his spouse. Therefore, we believe that under federal law it is unnecessary at this point to join the conjugal partnership as a party to a 1983 action.

## III

■ Defendant alleges that under the common law immunity accorded state legislators, as recognized in *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) and *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), he is absolutely immune from an action for damages or injunctive relief in federal court.

*Tenney v. Brandhove,* supra, 341 U.S. at 376, 71 S.Ct. at 788, declared that state legislators enjoy a federal common law immunity from liability *for their legislative acts,* that is similar in origin and rationale to that accorded Congressmen under the

Speech or Debate Clause ("Clause"). This Constitutional Clause [2] specifically states:

"They (legislators) shall in all Cases, except Treason, Felony, and Breach of the Peace, be privileged from Arrest during their Attendance at a Session of their respective Houses, and in going to and returning from the same; and for *any Speech or Debate in either House, they shall not be questioned in any other Place.*" (Emphasis supplied).

The reasons for the existence of this common law immunity for state legislators is clear, as appears from the federal cases:

"Moreover, under our system of federalism, the role of the state legislature is entitled to as much judicial respect as that of Congress. Congress may legislate on matters of national concern, while state legislators act on vital matters of local importance. The need for a Congress which may act free of interference by the Courts is neither more nor less than the need for unimpaired state legislatures. We show no more than a proper respect for state function, ... in holding that state legislators must be accorded a privilege similar to that of federal legislators."

*Star Distributors Ltd. v. Marino*, 613 F.2d 4 (2nd Cir., 1980).

The protection afforded by the Speech or Debate Clause covers "things generally done in session of the House by one of its members in relation to the business before it." *United States v. Johnson*, 383 U.S. 169, 179, 86 S.Ct. 749, 755, 15 L.Ed.2d 681 (1966), *citing Kilbourn v. Thompson*, 103 U.S. 168, 204, 26 L.Ed. 377 (1881). Legislative acts, however, are not all-encompassing. The heart of the Clause is speech or debate in either House. Insofar as the Clause is construed to reach other matters, such other matters must be an integral part of the deliberative and communicative processes by which members participate in committee and House proceedings with re-

spect to other questions which the Constitution places within the jurisdiction of either House. The courts have extended the privilege to matters beyond pure speech or debate in either House, but "only when necessary to prevent indirect impairment of such deliberation". *Gravel v. United States*, 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972).

■ The business of legislators is to legislate. They are absolutely immune when they are legislating, but when they act outside the *"sphere of legitimate legislative activity,"* they enjoy no special immunity. (Emphasis supplied). See *Tenney, supra,* 341 U.S. at 376, 71 S.Ct. at 788. *Doe v. McMillan*, 412 U.S. 306, 312–313, 93 S.Ct. 2018, 2024–25, 36 L.Ed.2d 912 (1973) citing *Gravel*, supra, 408 U.S. at 624–625, 92 S.Ct. at 2627. The heart of the issue of absolute legislative immunity in this case thus reduces to determining whether or not the hiring policies followed by Colberg can be considered as within the "legitimate legislative sphere of activity." The Court of Appeals for the Fifth Circuit has summarized various Supreme Court decisions regarding the matter of what falls within this sphere. See *Davis v. Passman*, 544 F.2d 865, 878 (5th Cir., 1977). The long line of decisions cited therein dealing with the Clause, clearly indicates that each activity will have to be considered independently in order to determine if legislative immunity applies to the situation at hand. What is certain is that not everything done by a legislator in his official capacity is necessarily considered within the sphere of legislative activity. This would seem even more applicable to the Speaker, who has numerous administrative responsibilities as well.[3]

■ *Davis v. Passman*, supra, is the only federal case that has dealt with the question of whether or not legislative immunity applies in a suit based on dismissal

---

2. United States Constitution Article 1, Section 6, Clause 1.

3. The 1982 revision of the Rules of the House of Representatives states the following:

"Rule III—The Speaker
1. The speaker will be the chief executive of all Administrative matters of the house ..."
(Translation ours).

of an employee. As our case deals with the other side of the employment coin, the refusal to hire, we shall consider it here. In *Davis*, supra, a panel of the court rejected the defense of legislative immunity in an action challenging gender discrimination in the dismissal of a female employee. The court began, at 878, with a statement of reasoning behind the legislative immunity defense:

> "The purpose of the protection afforded legislators is not to forestall judicial review of legislative action but to insure that legislators are not distracted from or hindered in the legislative tasks by being called into court to defend their actions." (Citations omitted).

The Court went on to say:

> "One could argue on Representative Passman's behalf that calling him into court to defend *any* action, whether related to congressional business or to his personal contractors or torts, risks detracting him from 'legislative tasks.' Supreme Court decisions, however, make clear that the speech or debate clause does not prohibit all such distractions."

In the case at hand, Colberg submits that the activity of hiring legislative employees is essential for the "due functioning of the legislative process", and that nothing is more important for the proper development of the legislative process than the hiring of legislative personnel. We can agree with the Defendant on both points. Nonetheless, we believe that the Defendant was acting in an administrative capacity not necessarily considered part of the traditional role of a legislator. The hiring of personnel cannot be qualified as an integral or necessary element of the deliberative and communicative process of the legislature

protected by legislative immunity. When the Speaker is hiring personnel, he is neither legislating nor formulating legislation. See *Davis, supra,* at 880.[4] Peripheral or tangential activities of a representative must not be confused with the legislative core. We, therefore, do not find Colberg protected in this matter by the absolute legislative immunity which he invokes.

For the reasons stated above, the Defendant's Motion to Dismiss is DENIED.

IT IS SO ORDERED.

---

**4.** In *Davis v. Passman,* 571 F.2d 793 (5th Cir. 1978), the Court of Appeals en banc reversed the panel opinion on the grounds that the plaintiff had no private cause of action for money damages under the due process clause of the Fifth Amendment. The Supreme Court granted certiorari and, in an opinion at 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846, reversed on this point and remanded the case, saying at 249, 99 S.Ct. at 2279:

"The Court of Appeals (en banc) did not consider, however, whether respondents conduct was shielded by the Speech or Debate Clause of the Constitution. Accordingly, we do not reach this point."
A footnote to Mr. Justice Stewart's dissent, *supra* at 251, 99 S.Ct. at 2280, states that the issue was fully briefed and argued before the appellate court in banc, and that the court's opinion gives no indication of why the Court did not decide it.