**Manuel AGROMAYOR, Plaintiff, Appellee,**

v.

**Severo COLBERG, Defendant, Appellant.**

**No. 83–1825.**

United States Court of Appeals, First Circuit.

Argued April 6, 1984.

Decided July 5, 1984.

Marcos A. Ramirez Lavandero, Hato Rey, P.R., with whom Marcos A. Ramirez, and Ramirez & Ramirez, Hato Rey, P.R., were on brief, for appellant.

Maria H. Sandoval, Santurce, P.R., with whom Harvey B. Nachman, and Law Offices of Nachman & Fernandez-Sein, Santurce, P.R., were on brief, for appellee.

Before BOWNES, ALDRICH and BREYER, Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

This action for compensatory and punitive damages involves three questions: appealability; the meaning and effect of a legislative rule relating to hiring and discharge of legislative employees, and legislative immunity. The rule caused plaintiff to lose an opportunity for employment as a legislative press officer. He brought suit under 42 U.S.C. § 1983, and defendant moved to dismiss on the basis of absolute legislative immunity.[1] The motion was de-

---

1. This opinion speaks only in terms of such immunity. Qualified immunity remains for an-  other day.

nied, 573 F.Supp. 939, and defendant appeals. We reverse.

In March, 1983, plaintiff, a journalist, a member of the New Progressive Party, applied to Representative Granados-Navedo, the minority leader of the Puerto Rico House of Representatives and also a member of the New Progressive Party, for employment as a House "press officer." Granados was willing, but to effect the employment he was required to submit plaintiff's name to defendant Colberg, the President of the House. Rule VII of the House provided as follows.

### RULE VII

### EMPLOYEES OF THE HOUSE OF REPRESENTATIVES

1. The permanent employees of the House will be designated by the President and will perform their functions during the term of each Legislative Assembly. The President may, at any moment, deem terminated the term for which any employee was employed when in his (or her) judgment such termination is necessary for the convenience of the service, and he (or she) will name a corresponding successor.

2. Temporary employees in the service of the House will be named in the same manner as permanent employees.

3. The President may discipline the employees and will be empowered to suspend them from their jobs by reason of their failure to comply with their duties. In such a case, the suspended employee will receive no salary or remuneration whatsoever and the President may name a substitute employee, and will inform the House on its following session.

Defendant was a member of the Popular, the other leading party. Before he had acted on Granados' request, plaintiff published an article in a San Juan newspaper, attacking the Popular Party, and defendant in particular. Defendant published a response in another newspaper, and wrote Granados that because of the defamatory nature of plaintiff's attack on his person,

and even more on the respectability of the House, he did not consider him "morally fit" to be a press officer, and would not effect his employment.

In his complaint plaintiff alleged that defendant's refusal to designate him for employment, (1) interfered with his freedom of association; (2) interfered with his freedom of speech and of the press; (3) discriminated against him because of his national origin, and (4) deprived him of a property interest in a job without due process. The parties stipulated to four exhibits: plaintiff's newspaper article; defendant's newspaper article; defendant's letter to Granados stating his reasons for not executing plaintiff's contract, and Rule VII. The court telescoped the complaint into one sentence, that plaintiff was refused "because of what he had written in a [newspaper] article and because he was not a Puerto Rican." After a discussion, post, it overruled defendant's immunity defense.

### 1. *Appealability*

■■■ Before considering the merits, we address the challenge to our appellate jurisdiction. Ordinarily, of course, the denial of a motion to dismiss is not an appealable "final decision" under 28 U.S.C. § 1291. *See Switzerland Cheese Ass'n, Inc. v. E. Horne's Market, Inc.,* 385 U.S. 23, 25, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966); *Securities & Exchange Comm'n v. Sloan,* 535 F.2d 679, 681 (2d Cir.1976), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357. It is now well settled, however, that where an order serves permanently to deny important collateral rights of a litigant, the order may be immediately appealable. *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949); *United States v. Sorren,* 605 F.2d 1211, 1213 (1st Cir.1979). The Court has applied this doctrine to pretrial denials of absolute immunity, reasoning that, if the immunity exists, it is intended not only to relieve defendants from liability, but also "from the burden of defending themselves." *See Helstoski v. Meanor,* 442 U.S. 500, 506–08, 99 S.Ct. 2445, 2448–

49, 61 L.Ed.2d 30 (1979); *see also Flanagan v. United States,* — U.S. —, —, 104 S.Ct. 1051, 1055–56, 79 L.Ed.2d 288 (1984); *Nixon v. Fitzgerald,* 457 U.S. 731, 741–43, 102 S.Ct. 2690, 2697–98, 73 L.Ed.2d 349 (1982). This intent would be unprotected if a defendant must wait until after trial to appeal. Accordingly, we have jurisdiction to determine now whether defendant is entitled to immunity, at least if he presents a plausible claim thereto. We hold that he has done this.

### 2. *The claims.*

■ Turning to the merits, before considering what, under section 1983, is at issue, we note what is not. We agree with the district court's short summation, ante, omitting mention of count (1), freedom of association, and (4), deprivation of property without due process. As to count (1), there is no allegation that plaintiff was refused employment because of his political party, but only that because of defendant's refusal, plaintiff lost a party opportunity. There can be no affirmative right to employment on the basis of party membership. Plaintiff would confuse incidental consequences of defendant's action with actuating purpose. If this reasoning were sound, every time a man, say, is given a job, rather than a woman, no amount of evidence of superior qualifications would suffice because the bottom line would be that the woman was rejected. Count (1) does not state a 1983 cause of action.

■ Nor, as to count (4), can there be a property interest in a contract not yet received. *Board of Regents v. Roth,* 408 U.S. 564, 577–78, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Even a cursory look at the rule's broad compass refutes plaintiff's allegation that it merely makes the President a rubber stamp, so that plaintiff had an agreement with Granados that created a property interest. The legislators' functions can be delegated, and nothing in the rule indicates that anything less than a full delegation was intended, or that the hiring task is any different in the hands of the President. We will not go beyond the plain language to inject ourselves into the internal workings of the legislature.

As to the balance of the complaint, we must deal with the speech and national origin claims as they relate to legislative immunity. We note, with respect to count (3), that although the written exhibits give little if any support to the claim that plaintiff was refused a position because of his nationality of origin, let alone that it was a determinative factor, the complaint asserts, and for the purpose of the motion it accordingly must stand admitted, that defendant told Granados orally that he declined both because of the newspaper article, and because plaintiff was not a native Puerto Rican. At the same time we remark, in passing, that it would be only with great difficulty, in light of the written record, that we could imagine plaintiff able to meet his requirement of showing that, but for his Argentinian birth, defendant would have been willing to designate his employment. *Cf. Mount Healthy City School District v. Doyle,* 429 U.S. 274, 283–84, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977).

### 3. *The immunity.*

The Supreme Court has long recognized that state legislators, when acting "in the sphere of legitimate legislative activity," enjoy a federal common law absolute immunity from suit under section 1983. *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 731–32, 100 S.Ct. 1967, 1974, 64 L.Ed.2d 641 (1980); *Tenney v. Brandhove,* 341 U.S. 367, 376, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951). This immunity is based on the need for an independent legislative branch, free from the coercion of restraint imposed by inquiry from other governmental authority, as well as from the time consuming problem of legislators having to defend their official acts in court. *See Tenney,* ante, 341 U.S. at 373–78, 71 S.Ct. at 786–89; *cf. United States v. Doe,* 455 F.2d 753, 758 (1st Cir.1972), *vacated on other gr'ds sub nom. Gravel v. United States,* 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). Although, unlike the constitutional immunity for Congress-

men, the immunity is not based upon the separation of powers, principles of comity and federalism also enter in the balance. *United States v. Gillock*, 445 U.S. 360, 370–73, 100 S.Ct. 1185, 1192–93, 63 L.Ed.2d 454 (1980).

The scope of "legitimate legislative activity" subject to immunity, however, is ill-defined.[2] The immunity has never applied to every activity undertaken by a legislator while in office, but only to those functions significantly related to legislating. In decisions regarding the Constitution's Speech and Debate Clause, the test has been stated as whether the challenged activities were "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel v. United States*, 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972). At the same time, although the common law immunity and the Speech and Debate Clause immunity have common roots in old English law, *see Tenney*, ante, 341 U.S. at 372–78, 71 S.Ct. at 786–89, decisions construing the Clause do not necessarily define the boundaries of the section 1983 immunity. *Cf. Supreme Court of Virginia v. Consumers Union*, ante.

The district court resolved this question as follows:

"In the case at hand, Colberg submits that the activity of hiring legislative employees is essential for the 'due functioning of the legislative process', and that nothing is more important for the proper development of the legislative process than the hiring of legislative personnel. We can agree with the Defendant on both points. Nonetheless, we believe that the Defendant was acting in an administrative capacity not necessarily considered part of the traditional role of a legislator. The hiring of personnel cannot be qualified as an integral or necessary element of the deliberative and communicative process of the legislature protected by legislative immunity. When the Speaker is hiring personnel, he is neither legislating nor formulating legislation. See *Davis*, [*Davis v. Passman*, post] *supra*, at 880. Peripheral or tangential activities of a representative must not be confused with the legislative core. We, therefore, do not find Colberg protected in this matter by the absolute legislative immunity which he invokes." (footnote omitted).

This is an interesting analysis, but we feel it contains an element of inconsistency. To the extent that an employee's function is "essential" to the legislative process, his qualifications, and, hence, his proper selection, should be correspondingly essential.[3] The question we must answer is, to what extent should a legislator be immune from judicial inquiry in determining those essential qualifications?

The Supreme Court has not decided whether the employment of legislative assistants is a legislative act subject to immunity. In *Davis v. Passman*, 544 F.2d 865, 878 (5th Cir.1977), *rev'd en banc on other gr'ds*, 571 F.2d 793, *rev'd*, 442 U.S. 228, 229, 99 S.Ct. 2264, 2268, 60 L.Ed.2d 846 the Fifth Circuit addressed whether a United States Congressman could be sued under the Fifth Amendment for firing a female aide, allegedly because of her sex. The panel held, inter alia, that the firing of a legislative aide was not a "legislative" act subject to absolute constitutional immunity. It reasoned that the employment of legislative aides simply was not integrally

---

**2.** If we were to seek guidance of Congressional intent from Title VII, 42 U.S.C. § 2000e *et seq.*, Congress expressly exempted from the definition of "employee[s]" covered by that act,

"any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff .... 42 U.S.C. § 2000e(f).

**3.** We were never satisfied with Senator Hruska's response, to the objection that a certain nominee for the Supreme Court was second rate, that the country's second raters were entitled to representation.

related to the process of developing and enacting legislation. The Fifth Circuit, en banc, reversed on other grounds, holding that no private right of action should be inferred from the Fifth Amendment. The Supreme Court reversed the en banc decision, but did not reach the question of the Congressman's immunity. Four dissenters thought the question should have been addressed, and at least three felt that the Congressman should be immune:

"A Member of Congress has a right to expect that every person on his or her staff will give total loyalty to the political positions of the Member, total confidentiality, and total support. This may, on occasion, lead a Member to employ a particular person on a racial, ethnic, religious, or gender basis thought to be acceptable to the constituency represented, even though in other branches of Government—or in the private sector—such selection factors might be prohibited....

....

"At this level of Government—staff assistants of Members—long-accepted concepts of separation of powers dictate, for me, that until Congress legislates otherwise as to employment standards for its own staff, judicial power in this area is circumscribed." *Davis v. Passman*, ante, 442 U.S. at 249–50, 99 S.Ct. at 2279 (Burger, C.J., dissenting).

While this opinion spoke for only three members of the Court, the others did not contradict it, but merely chose not to reach the question. We believe that, at least to a considerable degree, that opinion expressed a proper common law concern beyond strict speech and debate or comparable immunity that courts should exhibit towards legislators, state or federal.

Of course not all employment raises a legislative interest. We agree with the court in *Walker v. Jones*, 733 F.2d 923 (D.C.Cir.1984), that the position of House restaurant manager has no "meaningful input" with regard to the legislative function, such that the hiring or firing of that employee could be considered a "legislative" act. However, an employee dealing with "the deliberative and communicative processes," *Gravel*, ante, 408 U.S. at 625, 92 S.Ct. at 2627, must be of direct legislative importance. *Cf. id.*, at 616–17, 92 S.Ct. at 2622–23 ("[I]t is literally impossible, in view of the complexities of the modern legislative process, with Congress almost constantly in session and matters of legislative concern constantly proliferating, for members of Congress to perform their legislative tasks without the help of aides and assistants; ... the day-to-day work of such aides is so critical to the Members' performance that they must be treated as the latter's alter egos ....") Additionally, in applying the immunity we decline to inquire deeply into the functions performed by a particular personal legislative aide, inasmuch as such an inquiry itself threatens to undermine the principles that absolute immunity was intended to protect. Personal aides may perform a variety of tasks, only some of which are vital to the legislative process. The position at issue here is both ill-defined and open-ended, and not readily categorized as "legislative" or "non-legislative." However, we see enough opportunity for "meaningful input" into the legislative process such that the employment decision should be immunized.[4]

### 4. *Count 2—Freedom of Speech*

We have no possible problem with Count 2, plaintiff's complaint that defendant's failure to hire him unconstitutionally interfered with his freedom of speech. First, we would draw a substantial distinction between discharge from employment,

---

4. "Coordinate the relations between Representative Granados-Navedo and the other members of the New Progressive Party delegation in the House of Representatives with the press of the Island; coordinate the press conferences with these members and provide all the orientation and technical services in the defined areas; and, such other functions that Representative Granados-Navedo entrusts him to perform."

If there is a seeming underlying conflict here between plaintiff's proposed duties and defendant's being the one, under the rule, to effect the employment, this is a legislative matter, not our concern.

*cf. Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and original selection. Even with respect to discharges, a government employer has considerable leeway to base his decision on potentially disruptive speech. *See Connick*, ante. He should have far greater discretion to refuse employment because an applicant's expression of views indicates the possibility of such disruption. We are, indeed, startled at the concept of awarding damages on the theory that it is an unconstitutional abridgment of plaintiff's right to free speech to take into consideration his choice of speech when weighing his qualifications for legislative employment. There are few areas of government employment where a person's choice of speech and beliefs would be so legitimately important. Are you looking for legislative employment? Under plaintiff's rule, exercise your speaking "rights" in a way that you know will be found personally, or professionally distasteful, and, at the least, you have a lawsuit.

Legislators must have broad freedom of choice. We will not hold that the general, non-specific language of section 1983 sanctions judicial inquiry into the comparative rights of legislators to choose compatible employees and the freedom of applicants for employment to have expressed their views prior to employment.

### 5. *Count 3—National Origin.*

Plaintiff's allegations that he was denied the position because of his Argentinian birth are more troublesome. It would be plausible, perhaps, to have the absolute legislative immunity, given an applicant to which it would be applicable, depend upon some criteria and not others. Nonetheless, we recognize, as did the *Passman* minority, that a legislator has a legitimate interest in the background as well as the other qualifications of his assistants. Indeed, we could take judicial notice that this is a constant concern. A legislative employee may have relations with the legislator's public that render characteristics even in a sense collateral to the employment nevertheless of

substantial importance. And once an employment position falls within the class in which a legislative right of choice is to be recognized (barring outright patronage, or mere party affiliation, no way here involved, and as to which we express no opinion), it would effectively destroy the immunity if factual inquiry and judicial resolution were to be made as to the legislative wisdom. We cannot feel that there should be a judicial employment office in charge of legislative hiring.

*Reversed.*