**Deborah G. WEST, Plaintiff,**

v.

**Michael K. PHILLIPS, in his individual capacity, and Baron Hill, in his individual capacity, Defendants.**

**No. IP 93–945.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Aug. 26, 1994.

liability. The Defendants do not dispute this argument at this time.

310

David T. Hasbrook, Ruckelhaus Roland Hasbrook & O'Connor, Indianapolis, IN, for plaintiff.

John E. Taylor, Ann Carr Mackey, Sommer & Barnard, Indianapolis, IN, for defendants.

## ENTRY

BARKER, Chief Judge.

Michael Phillips, the Speaker of the Indiana House of Representatives and his assistant, Baron Hill, (collectively "Defendants") employed Deborah G. West ("West") as a legislative assistant for the Democratic Caucus of the Indiana House of Representatives ("the Caucus"). On May 19, 1993, the Defendants fired her. West contends the Defendants terminated her in retaliation for her informing a public interest group and newspaper about the allegedly unethical conduct of Representative Vernon Smith, a member of the Caucus. She has filed a two-count complaint against the Defendants in their individual capacities seeking compensatory and punitive damages, reasonable attorney fees, and costs. The Defendants present the Court with a motion for judgment on the pleadings. For reasons explained below, the Court grants the motion in part and denies it in part.

## I. BACKGROUND

From approximately May 1990 to May 14, 1993, West was employed as a legislative assistant for the Caucus and worked under the supervision of the Defendants. During this period, the Defendants assigned her to

assist several Democratic Representatives, including Vernon Smith. The exact nature of her duties is unclear from the amended complaint.

When West was working for Representative Smith, he apparently required her to perform assorted clerical tasks. He also allegedly requested that she prepare and mail letters on Indiana House of Representative letterhead to various private organizations for what appeared to be private causes. West believed such actions were unethical, and in the summer of 1990, she reported her concerns to the staff director of the Caucus, Ann Latscha. West sought clarification from Latscha as to whether Representative Smith's conduct was illegal. When the Caucus failed or refused to address her concerns, West requested that her efforts be documented in her personnel file. During the course of her employment, at least two members of the Indiana House of Representatives informed West that Representative Smith had acted inappropriately. According to West, Smith's expenditure of public funds for private fundraising efforts continued through her termination in 1993.

During the Winter of 1991, Common Cause of Indiana, a non-profit, non-partisan public interest group, investigated Representative Smith's use of State letterhead and postage for private purposes. *See* Plaintiff's Exhibit A. The *Indiana Legislative Insight*, a legislative paper, also questioned the propriety of Representative Smith's actions in December 1991. *See* Plaintiff's Exhibit B. In approximately April 1993, West contacted Common Cause of Indiana regarding Representative Smith's misuse of State letterhead and postage. Shortly thereafter, the *Indianapolis News* approached West concerning Representative Smith's conduct. On April 28, 1993, based on the information supplied by West, the *Indianapolis News* published a story about Representative Smith's allegedly unethical actions. *See* Plaintiff's Exhibit C. Following the publication of the article, Baron Hill, who was working for Michael Phillips, terminated West's employment as a legislative assistant for the Caucus.

West filed a two-count complaint with the Court on December 30, 1993: Count I states that the Defendants unlawfully terminated West's employment in retaliation for her conversations with Common Cause of Indiana and the *Indianapolis News* in violation of rights guaranteed to her under the First and Fifth Amendments of United States Constitution; Count II states that the Defendants' termination of West's employment violated Article I, § 9 of the Indiana Constitution which prohibits the passage of any law restraining a person's speech. West seeks compensatory and punitive damages, attorney fees, and costs.

In their answer, the Defendants deny West's allegations and invoke a host of affirmative defenses. Their motion is based on the defenses of legislative immunity, qualified immunity, and a provision of the Indiana Constitution.

## II. DISCUSSION

### A. Judgment on the Pleadings Standards

▪▪▪▪ In this case, the Defendants have advanced two Rule 12(b) defenses, failure to state a claim on which relief can be granted and lack of subject matter jurisdiction. *See* Defendants' Amended Motion for Judgment on the Pleadings. The Court relies only on the pleadings in deciding this motion. The standard used to evaluate the Defendants' motion is the same as that for a Rule 12(b)(6) motion.[1] Accordingly, the Court views all

---

1. The standard the Court is required to apply when evaluating a motion for judgment on the pleadings is often a point of confusion in many civil cases. The conundrum appears in deciding whether to apply the standard for passing on a Rule 12(b)(6) or a Rule 56 motion. The Seventh Circuit Court of Appeals stated in *U.S. v. Wood*, 925 F.2d 1580 (7th Cir.1991) that a motion for judgment on the pleadings should be analyzed according to the same standard as a motion to dismiss. *Id.* at 1581 (citing *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir.1989)).

However, in *Alexander v. City of Chicago*, 994 F.2d 333 (7th Cir.1993), the Seventh Circuit held that the summary judgment standard was appropriate when the motion is used to dispose of the substantive merits of the case and not procedural defects as in a Rule 12(b) motion. *Id.* at 335–36. The *Alexander* Court stated that the case cited in *Wood* limited the use of the Rule 12(b)(6) standard to circumstances in which the moving party "specifically asserted 12(b) defenses." *Id.* at 335 n. 2. Furthermore, if the court considers mat-

facts in the light most favorable to West, the non-moving party. *National Fidelity Life Ins. Co. v. Karaganis,* 811 F.2d 357, 358 (7th Cir.1987). "[T]he motion should not be granted unless it appears beyond doubt that the plaintiff cannot prove any facts that would support [her] claim for relief." *Thomason v. Nachtrieb,* 888 F.2d 1202, 1204 (7th Cir.1989) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). The purpose of a motion to dismiss is not to decide the merits of the case but rather the sufficiency of the complaint. *Gibson v. Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990) (citing *Triad Assoc., Inc. v. Chicago Housing Authority,* 892 F.2d 583, 586 (7th Cir.), *cert. denied,* 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990)). If the facts in the complaint or any reasonable inferences drawn therefrom support a claim for which relief can be granted, the Defendants' motion must be denied. *See Bowman v. Franklin* 980 F.2d 1104, 1107 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2417, 124 L.Ed.2d 639 (1993).

### B. West's Claims

1. *Count I: 42 U.S.C. § 1983 Claims*

Count I sets forth claims under 42 U.S.C. § 1983 against the Defendants in their individual capacities for violation of the First and Fifth Amendments of the United States Constitution. West claims that the defendants fired her because she exercised her constitutional right to free speech in conversing with Common Cause of Indiana and the *Indianapolis News.*

 a. *42 U.S.C. § 1983 Burdens*

■ 42 U.S.C. § 1983 states:

ters outside the pleadings, the motion must be viewed as one for summary judgment. *See* F.R.C.P. 12(c).

2. The Court notes that even if West claimed a Due process violation under the Fourteenth Amendment, the Defendants' motion would still be granted. In order to claim such a violation, she must have a property interest in her employment. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Waters v. Churchill,* —— U.S. ——, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (plurality opinion) (stating

Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983 on which relief can be granted, a plaintiff must prove two elements: "(1) the deprivation of a right secured by the Constitution and the laws of the United States; and (2) the person or persons who caused the alleged deprivation were acting under the color of state law." *Grosz v. Indiana,* 730 F.Supp. 1474, 1476–77 (S.D.Ind.1990).

In this case, West argues that the Defendants violated her constitutional rights under the First and Fifth Amendments because she was terminated for engaging in the protected activity of speaking about a matter of public concern. For the purposes of this motion, the Court assumes that West did lose her job for this reason.

■ Even assuming that the facts pleaded in the complaint are true, the Court finds that West fails to state a claim for a violation of the Fifth Amendment which protects against acts taken under color of federal law. *Monitor v. Chicago,* 653 F.Supp. 1294, 1299 (N.D.Ill.1987); *see, e.g., Jackson v. Byrne,* 738 F.2d 1443, 1446 (7th Cir.1984); *Hayes v. Kingsley,* 1993 WL 489738, *2, 1993 U.S.Dist. LEXIS 16436, *4 (N.D.Ill. November 16, 1993). West was not dismissed pursuant to federal law or by a federal actor, making the Fifth Amendment irrelevant to this case.[2] Therefore, the Defendants' mo-

that at-will employees generally have no constitutional claims at all); *Churchill v. Waters,* 977 F.2d 1114, 1126 (7th Cir.1992), *vacated,* —— U.S. ——, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (finding that at-will employees do not have a First Amendment due process right to protect them from retaliatory discharge for speech that is a matter of public concern); *Kolman v. Sheahan,* 31 F.3d 429 (7th Cir.1994) (holding plaintiffs first must demonstrate a property right in continued employment to claim a Due Process violation). West failed to plead any property interest in her job.

tion is granted as to West's Fifth Amendment claim. Whether West's First Amendment claim is subject to the Defendants' affirmative defenses is a more complicated issue.

### b. *Legislative Immunity*

■ The Defendants claim that, even if they terminated West because of her unauthorized conversations with the media and others, legislative immunity protects them from suit since firing an employee is within the scope of legitimate legislative activity. For a legislator to be absolutely immune from civil or criminal suit, he or she must have been acting in his or her legislative capacity. *Tenney v. Brandhove,* 341 U.S. 367, 376, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951). Therefore, the Court must determine if the Defendants acted in their legislative capacity in firing West.

### 1. *History of Legislative Immunity*

■ The Speech and Debate Clause of the United States Constitution states that no Senator or Representative can be held liable "for any Speech or Debate in either House." Art. I, § 6, cl. 1. The Framers of the Constitution borrowed the doctrine of legislative immunity from the English Parliament which established the immunity in their 1689 Bill of Rights. *See Tenney,* 341 U.S. at 372, 71 S.Ct. at 786. The privilege was established to allow legislators to speak and act without fear of civil or criminal repercussions. *Id.* at 375, 71 S.Ct. at 787. As stated by James Wilson, a member of the Committee of Detail which was responsible for the inclusion of the Speech and Debate Clause in the Constitution,

> "[i]n order to enable and encourage a representative of the public to discharge his public trust with firmness and success, it is indispensably necessary, that he should enjoy the fullest liberty of speech, and that he should be protected from the resentment of every one, however powerful, to whom the exercise of that liberty may occasion offence."

*Id.* at 373, 71 S.Ct. at 786 (quoting II Works of James Wilson (Andrews ed. 1896) 38).

While the Framers incorporated the doctrine of legislative immunity into the Speech and Debate Clause, they did not define what actions are "legislative," leaving the Supreme Court to decide which aspects of a legislator's job are entitled to absolute immunity. The Supreme Court first addressed this issue in *Kilbourn v. Thompson,* 103 U.S. 168, 26 L.Ed. 377 (1881). According to the Court in *Kilbourn,* a legislator was absolutely immune from liability for "things generally done in a session of the House by one of its members in relation to the business before it." *Id.* 103 U.S. at 204.

Seventy years later, the Court narrowed this rule in *Tenney v. Brandhove, supra* and held that the Speech and Debate Clause protects a legislator who acts within the "sphere of legitimate legislative activity." *Id.* at 376, 71 S.Ct. at 788. Furthermore, the Court stated that the Speech and Debate Clause applies not only to federal legislators but also to state legislators. *Id.* If an act was within the "sphere of legitimate legislative activity," the intent of the legislator was irrelevant because such an inquiry interfered with the separation of powers. *Id.* at 377, 71 S.Ct. at 788. The courts were to defer to the voters to decide if a legislator who held improper motives was fit to represent them. *Id.* at 378, 71 S.Ct. at 789.

Again, in *Gravel v. United States,* 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972), the scope of the Speech and Debate Clause was presented to the Supreme Court with respect to a Senator's aide. The Court reaffirmed the test established in *Tenney* but elaborated on what was within the "sphere of legitimate legislative activity." According to the Court, legislative immunity shielded a legislator if his or her action was "an integral part of the deliberative and communicative processes ... with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Id.* at 625, 92 S.Ct. at 2627. The Court also held that insofar as the doctrine of absolute immunity applies to a legislator, it applies equally to his or her legislative aide. *Id.* at 621, 92 S.Ct. at 2625. Therefore, if a legislator is entitled to immu-

nity for a certain action, his or her legislative aide is protected by the same immunity. *Id.*

The Supreme Court has held that the Speech and Debate Clause protects voting and debating on the House floor as well as compiling and subpoenaing records. *United States v. Brewster,* 408 U.S. 501, 516 n. 10, 92 S.Ct. 2531, 2539 n. 10, 33 L.Ed.2d 507 (1972). However, the Court also has held that such activities as running errands for constituents, making appointments with government agencies, assisting in securing government contracts, preparing news letters, news releases, and delivering speeches outside of the House are *not* within the scope of absolute immunity. *Id.* at 513, 92 S.Ct. at 2537. While the Court in *Kilbourn* stated that the Speech and Debate Clause should not be read literally, the Court in *Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) explained that it "has been careful not to extend the scope of protection further than its purposes require." *See Kilbourn,* 103 U.S. at 203; *Forrester,* 484 U.S. at 224, 108 S.Ct. at 542. These concepts have made it difficult to determine if legislative immunity protects certain endeavors such as staff employment.

The Supreme Court has not explicitly decided whether the firing or hiring of a member of a legislator's staff qualifies as a "legitimate legislative activity." In *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), a United States Congressman terminated a deputy administrative assistant because of her gender. The Court held that the plaintiff had a cause of action and that damages were the appropriate remedy, but the Court refused to address whether legislative immunity protected the legislator from the suit since the Court of Appeals did not

rule on the issue.[3] *Id.* at 236 n. 11, 99 S.Ct. at 2272 n. 11.

■ Interpretations of judicial immunity, though not directly on point here, are nonetheless informative. Courts are required to analyze the precise function performed by a judge to determine if that judge is entitled to the protections of absolute immunity. *Forrester,* 484 U.S. at 224, 108 S.Ct. at 542, 98 L.Ed.2d 555.[4] In *Forrester,* the Court held that a Circuit Judge's demotion and firing of a probation officer were administrative functions which were not protected under judicial immunity. *Id.* at 229, 108 S.Ct. at 545. The Court "examine[d] the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and ... evaluate[d] the effect the exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Id.* at 224, 108 S.Ct. at 542. The Court, however, failed to elaborate whether the holding in *Forrester* applies only to the common law judicial and executive immunities or also to the constitutionally established legislative immunity.

### 2. The Seventh Circuit's Treatment of Legislative Immunity

In the absence of any United States Supreme Court case deciding whether employment decisions are within the "sphere of legitimate legislative activity," the circuit courts have developed their own standards incorporating related holdings of the Supreme Court. In *Rateree v. Rockett,* 852 F.2d 946, 950 (7th Cir.1988), the Seventh Circuit Court of Appeals held that eliminating public employees' positions through budget cuts was a legislative function entitling

---

3. Chief Justice Burger's dissent severely criticized the majority for not taking that additional step. *Id.* at 249, 99 S.Ct. at 2279 (Burger, C.J. dissenting). He argued that the issue before the Court was not the parameter of the Speech and Debate Clause but rather separation of powers. *Id.* In the Chief Justice's view, a legislator was allowed "to employ a particular person on a racial, ethnic, religious, or gender basis thought to be acceptable to the constituency represented even though in other branches of Government— or in the private sector—such selection factors might be prohibited." *Id.* at 249–50, 99 S.Ct. at 2279. The Chief Justice stated that the judiciary

should defer to the legislature to enact laws if such laws are needed. *Id.* at 250, 99 S.Ct. at 2279.

4. This case was appealed from the Seventh Circuit Court of Appeals which held that the judge's actions were judicial in nature because the probation officer was dealing with the judge in a manner tied to the judge's discretionary decisions. *Forrester v. White,* 792 F.2d 647, 657 (7th Cir.1986), *rev'd* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988).

the legislators to absolute immunity. In *Rateree*, a group of employees brought § 1983 action against a city council for eliminating their jobs. Following the analysis in *Forrester*, the court analyzed the function entrusted to the city council which underlay its decision to determine if the action taken was legislative or administrative.[5] *Id.* The Court stated that "employment decisions generally are administrative, regardless whether made by a judge or a legislature." *Id.* However, the court held that the city council's decision was legislative since the council eliminated the jobs through the traditional legislative act of budget cuts. "Almost all budget decisions have an effect on employment[;] ... however, [this] does not transform a uniquely legislative function into an administrative one." *Id.* The court distinguished the case from *Forrester* and *Davis* in that the council did not fire the employees; they completely eliminated the jobs from the budget, making the decision clearly a legislative activity. *Id.*

In *Hansen v. Bennett*, 948 F.2d 397 (7th Cir.1991), *cert. denied*, 504 U.S. 910, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992), the Seventh Circuit again analyzed legislative immunity through the functional approach established in *Forrester*. The court stated that legislators are entitled to "absolute immunity only when they [are] voting on a resolution, speaking on legislation or in a legislative hearing, or subpoenaing records for the use in a legislative hearing." *Id.* at 402 (footnotes omitted). In view of the Seventh Circuit's analysis in *Rateree* and *Hansen*, the Court now analyzes the function underlying the Defendants' decision to fire West in order to determine if the Defendants are absolutely immune.[6] *But see Hudson v. Burke*, 617 F.Supp. 1501, 1511 (N.D.Ill.1985) *aff'd* 913 F.2d 427 (7th Cir.1990) (holding a court should analyze the function of the employee to determine if the legislator is entitled to legislative immunity).[7]

### 3. The Decision to Fire West

The Court must ascertain whether the decision to terminate West's employment arose out of or constituted "an integral part of the deliberative and communicative process" that characterizes legislative activity. Legislative immunity protects the Defendants only if they are performing a legislative function. *Rateree*, 852 F.2d at 950.

According to the allegations in the complaint, Defendants fired West because of her

---

**5.** While this analysis tracks the Supreme Court's decision in *Forrester*, this case is distinguishable in that *Forrester* addressed only the issue of common law judicial immunity and not legislative immunity. As the Seventh Circuit Court explained in *Eades v. Sterlinske*, 810 F.2d 723 (7th Cir.1987) *cert. denied* 484 U.S. 847, 108 S.Ct. 143, 98 L.Ed.2d 99 (1987), "judicial immunity affords less protection than legislative immunity...." *Id.* at 725.

**6.** The District of Columbia Court of Appeals adopted an analogous approach in *Gross v. Winter*, 876 F.2d 165 (D.C.Cir.1989), following the Supreme Court's decision in *Forrester*. In *Gross*, a councilmember allegedly fired a legislative researcher because she requested leave during Jewish holidays. *Id.* at 166. The councilmember claimed that since the researcher was directly involved in creating and executing legislative policies, absolute immunity barred the employee's suit. *Id.* The Court of Appeals held that the researcher's actual duties were irrelevant in determining whether the councilmember was entitled to absolute immunity. *Id.* Just as in *Rateree* and *Hansen*, the Court focused its analysis on the function of the councilmember in making the decision to terminate the employee. *Id.* at 172. Stating that the firing of the researcher was no different than the firing of the probation officer in *Forrester*, the Court concluded that the deci-

sion was undertaken in the councilmember's administrative and not legislative capacity. *Id.* at 172–73. Therefore, the Court held that the councilmember was not entitled to absolute immunity.

**7.** The district court in *Hudson* followed the First Circuit's decision in *Agromayor v. Colberg*, 738 F.2d 55 (1st Cir.1984), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 515, 83 L.Ed.2d 405 (1984). In *Agromayor*, the First Circuit held a legislator was immune from liability for not hiring an individual for that position because the function of a legislative aide was to assist in "the deliberative and communicative process" of legislation. *Id.* at 60. The possibility for "meaningful input" by the legislative aide was sufficient for the Court of Appeals to hold that the legislator was protected by the Speech and Debate Clause. *Id.* The court analyzed the function of the employee rather than the legislator's role when making employment decisions, as was done in *Forrester*.

*Hudson* and *Agromayor* are distinguishable from the case here. *Agromayor* was decided before the Supreme Court's decision in *Forrester*. Furthermore, the plaintiffs in *Hudson* were fired because of their political affiliation which affected their jobs, not for speaking on a matter of public concern.

conversations with the media and others about Smith's allegedly unethical use of House postage and letterhead. Firing an employee for such actions has nothing to do with the performance of legitimate legislative activity. The Defendants were neither attending a legislative hearing, subpoenaing documents, voting on legislation, nor speaking on legislation. *Hansen, supra.* Furthermore, the firing of a single employee fails to include the characteristics of a legislative act. *See Rateree,* 852 F.2d at 950. Thus, the Defendants did not act in their legislative capacity when they fired West. Their decision was administrative and not protected by legislative immunity. *Id.* Therefore, the Defendants are not immune from suit.

### c. Qualified Immunity

The Defendants claim that even if they are not absolutely immune from West's suit, the Court should nevertheless grant judgment on the pleadings in their favor because qualified immunity protects their actions. The concept of qualified immunity was created to "avoid[ ] unnecessarily extending the scope ... of absolute immunity." *Forrester,* 484 U.S. at 224, 108 S.Ct. at 542, 98 L.Ed.2d 555. The Supreme Court has applied this concept as an alternative to the common law immunities when an executive or judge does not act in his or her official capacity. *See, e.g., Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); *Forrester, supra; Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court, however, has never explicitly held that the doctrine of qualified immunity applies to the legislative branch.

### 1. The Applicability of Qualified Immunity to the Defendants

The Supreme Court established the modern doctrine of qualified immunity in *Harlow*

*v. Fitzgerald, supra.* In *Harlow,* the Court held that qualified immunity applied to two Presidential aides' discretionary acts that did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. The Court held that the right violated must be clearly established at the time the action occurred. *Id.* The Court stated that this doctrine applies to "government officials." *Id.* However, Supreme Court authority as to whether a legislator is a "government official" is scarce and uncertain.[8]

In *Hansen, supra,* the Seventh Circuit implied that legislators are entitled to qualified immunity. *Hansen,* 948 F.2d at 404. The Seventh Circuit held that a mayor was not acting in his legislative capacity when he had a person removed from a public forum during a city council meeting.[9] *Id.* at 398. The court stated that since the case was an appeal from a denial of summary judgment, it could not rule on the mayor's qualified immunity without making a determination of a disputed fact which was beyond its jurisdiction. *Id.* at 404. *Hansen* implies that the Seventh Circuit would recognize a claim of qualified immunity for a legislator. Additionally, various other circuits have held that legislators are entitled to qualified immunity. *See, e.g., Flinn v. Gordon,* 775 F.2d 1551, 1553 (11th Cir.1985), *cert. denied,* 476 U.S. 1116; 106 S.Ct. 1972, 90 L.Ed.2d 656 (1986) (holding that a state representative was allowed to claim qualified immunity for her recommendation that a fellow representative be publicly reprimanded for sexual harassment);[10] *Chastain v. Sundquist,* 833 F.2d 311, 316 (D.C.Cir.1987), *cert. denied,* 487 U.S. 1240, 108 S.Ct. 2914, 101 L.Ed.2d 946 (1988) (holding that the legislative branch should

---

8. The Supreme Court has given hints concerning whether legislators can use the qualified immunity defense but has not explicitly so ruled. In *Doe v. McMillan,* 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973), the Supreme Court stated in dicta that qualified immunity applies to officials in the legislative branch. *Id.* at 319 n. 13, 93 S.Ct. at 2028 n. 13.

9. The mayor was entitled to legislative immunity because he had legislative power to break a tie when the city council voted on legislation. *Hansen,* 948 F.2d at 400.

10. The Court of Appeals did not address the issue of absolute immunity because the appeal from the motion to dismiss was based on a finding that the defendant was entitled to qualified immunity. *Flinn,* 775 F.2d at 1552.

not receive qualified immunity in common law torts such as defamation or slander, but legislators could claim qualified immunity in constitutional or statutory suits); *Richards v. Harper*, 864 F.2d 85, 88 n. 2 (9th Cir.1988) (affirming the district court's holding that a Congressman was shielded from liability by qualified immunity); *Davis v. Passman*, 544 F.2d 865, 881 (5th Cir.1977) *rev'd on other grounds*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (holding that the inapplicability of absolute immunity does not prevent a Congressman from claiming qualified immunity); *Hartley v. Fine*, 780 F.2d 1383, 1387 (8th Cir.1985) (upholding a district court's decision to grant a state legislator qualified immunity for firing an employee). As a result of Supreme Court dicta and Seventh Circuit interpretations, as well as holdings from other circuits, this Court concludes that the Defendants are entitled to assert qualified immunity in the instant case.

 Under qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. To ascertain whether a government official should receive qualified immunity, a court must answer two questions: "(1) Does the alleged conduct set out a constitutional violation? and (2) Were the constitutional standards clearly established at the time in question?" *Wade v. Hegner*, 804 F.2d 67, 70 (7th Cir.1986).

 Therefore, the Court first addresses the issue whether West's termination violated her First Amendment right to free speech. For the First Amendment to protect the speech of public employees, the employee must be speaking on matters of public concern. *Connick v. Myers*, 461 U.S. 138, 146–47, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). The right, of course, is not absolute and must be weighed against "the government's interest in effective and efficient fulfillment of its responsibilities to the public." *Id.* at 150, 103 S.Ct. at 1691. In weighing these two interests, the Court must view the facts as a "reasonable employer found them

to be." *Waters*, —— U.S. at ——, 114 S.Ct. at 1889. If the speech has strong social value, the employer's right to suppress or punish it diminishes. *Eberhardt v. O'Malley*, 17 F.3d 1023, 1026 (7th Cir.1994).

### 2. West's Right to Speak on a Matter of Public Concern

 Assuming again that the Defendants fired West for her communications with the aforementioned organizations, her speech about the alleged or possible corruption of a legislator is a matter of public concern. "In an age of ever dwindling public resources, mounting deficits, and demand for greater accountability by public officials, charges of inequitable allocation or misuse of public funds implicates matters of substantial public importance." *Berg v. Hunter*, 854 F.2d 238, 243 (7th Cir.1988), *cert. denied*, 489 U.S. 1053, 109 S.Ct. 1314, 103 L.Ed.2d 583 (1989).

 In order to determine if the Defendants' interest in efficiency and harmony outweighs West's interest in disclosing possible official abuses, a reasonable legislator must believe that West's speech had a disruptive impact on the operation of the legislative branch or position. *Waters*, —— U.S. at ——, 114 S.Ct. at 1889. When a government employee has a strong interest in speaking on a matter of public concern, such as the misuse of public funds, "the government may have to make a substantial showing that the speech is, in fact, likely to be disruptive . . . ." *Id.* The following criteria are evaluated to determine if the disruption from speech outweighs the value of that speech:

> (1) the effect of the plaintiff's conduct on the discipline and harmony among co-workers; (2) the need for confidentiality; (3) whether the conduct impeded the employee in competently performing her daily duties; and (4) the need to encourage a close and personal relationship involving loyalty and confidence between the employee and her supervisors.

*Conner v. Reinhard*, 847 F.2d 384, 389 (7th Cir.1987), *cert. denied*, 488 U.S. 856, 109 S.Ct. 147, 102 L.Ed.2d 118 (1988) (citing *Clark v. Holmes*, 474 F.2d 928, 931 (7th Cir.1972), *cert. denied*, 411 U.S. 972, 93 S.Ct. 2148, 36 L.Ed.2d 695 (1973)).

■ Although the Defendants' interest in effective, harmonious and efficient government is significant, a reasonable official would not believe that speech concerning the alleged corruption of a legislator would hinder the *legitimate* goals of the Caucus. Taking the facts in the light most favorable to West, the Court finds that West's actions do not appear to have had any effect on her or her co-workers' productivity. Furthermore, the requirement of confidentiality of legitimate legislative activity would not be jeopardized since West's speech concerned alleged unethical or otherwise improper activities. Her speech may have affected her relationship with the Defendants, since she made public the controversial information. Furthermore, West asserts that she offered the same information to the staff director of the Caucus well before she disclosed it to outside sources, thereby exhibiting her loyalty to the Caucus. The Court, therefore, concludes that the Defendants have failed to make a substantial showing that the disruptiveness of West's speech outweighs her interest in free speech. West's allegations, if true, would constitute a violation of her First Amendment constitutional rights.

### 3. *West's Right to Speak on a Matter of Public Concern Was Clearly Established*

■ In deciding whether a constitutional right has been "clearly established," "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir.1993) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). Since the Defendants have claimed qualified immunity, West bears "the burden of showing that the constitutional right allegedly violated was clearly established 'before the defendant[s] acted....' " *Id.* (citing *Rice v. Burks*, 999 F.2d 1172, 1174 (7th Cir.1993) (citing *Rako-*

*vich v. Wade*, 850 F.2d 1180 (7th Cir.), *cert. denied*, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988))). In satisfying this burden, West must "offer either a closely analogous case or evidence that the Defendants' conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts." *Id.* Defendants are not required "to act as legal scholars and predict the future direction of the law." *Kompare v. Stein*, 801 F.2d 883, 887 (7th Cir.1986).

■ The two parties disagree as to the precise law that must be clearly established. West believes that the Court should analyze the law surrounding retaliatory discharge of an employee speaking on a matter of public concern. The Defendants contend, on the other hand, that the focus should be whether the law concerning the applicability of absolute immunity to a legislator's employment decisions was clearly established. According to the Defendants, even though they may have violated West's rights, a reasonable official would not have known that he or she was not absolutely immune. West's approach to this dispute is the correct approach. The test for determining qualified immunity in *Harlow, Anderson,* and *Casteel* focuses on the violation of a "clearly established" constitutional *right,* not a "clearly established" affirmative defense.[11]

■ In support of her argument that her First Amendment right was clearly established, West cites *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) in which a teacher was fired for writing a letter to a local newspaper criticizing the school board and the superintendent. The Supreme Court held that "absent proof of false statements knowingly or recklessly made ... [the] teacher's exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment." *Id.* at 574, 88 S.Ct. at 1737. While these are not the exact facts of the case before the Court, they are closely analogous. Both employees

---

11. In cases involving politically motivated firings, a court must determine not only if the right that was violated was clearly established but also if the law clearly established that the employer was prevented from firing an employee in that particular position. *Wrigley v. Greanias,* 842

F.2d 955, 958 (7th Cir.1988), *cert. denied,* 488 U.S. 850, 109 S.Ct. 132, 102 L.Ed.2d 105 (1988). West's case does not follow this line of cases because she does not allege that the Defendants fired her for her political views. The more closely analogous cases are *Pickering* and its progeny.

were public officials, and both were terminated allegedly for revealing information to outside sources. West's claim could be viewed as even stronger than Pickering's because she was attempting to stop what she believed was corruption in the Indiana legislature.

West further invokes *Churchill v. Waters*, 977 F.2d 1114 (7th Cir.1992), *vacated*, ——— U.S. ———, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994)[12] to illustrate that the right was "clearly established." Again, this case is instructive in determining whether an employee can properly be fired in retaliation for her speech. The Seventh Circuit stated that "in 1987 the law was clear that the speech of public employees while at work was protected under the First Amendment if it was about matters of public concern in connection with their work-place."[13] *Id.* at 1128. The Court held that a reasonable official should have known that he or she was violating an employee's constitutional rights if the employee was fired for speaking on a matter of public concern. *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).

West has met her burden of establishing that if she was in fact terminated for speaking about a matter of public concern, that decision to terminate her employment violated a right that was clearly established prior to the Defendants' actions.[14] Since the right was clearly established prior to the time of West's termination, the Defendants' motion for judgment on the pleadings based on qualified immunity is denied.

2. *Count II: Indiana Constitutional Claim under Article 1, § 9*

 West also attempts to assert a claim against the Defendants based on Article 1,

§ 9 of the Indiana Constitution, which provides that "[n]o law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatsoever: but for the abuse of this right, every person shall be responsible." Ind. Const. Art. 1, § 9. Procedurally, the Court has supplemental jurisdiction over this claim under 28 U.S.C. § 1367(a) as conduct arising from "the same case or controversy."

West argues that the last phrase of Article 1, § 9 creates a cause of action. Whether it does or does not is of no consequence in this case because the Court can resolve the issue on other grounds. The section clearly provides that "[n]o law shall be passed." No one has alleged that the Defendants passed a law restricting West's right to free speech. Thus, West's rights under this provision of the Indiana Constitution could not have been violated under the facts as alleged by plaintiff. Defendants' motion for judgment on the pleadings relating to West's claim based on the Indiana Constitution is granted.

### III. CONCLUSION

For the above stated reasons, the Defendants' motion for judgment on the pleadings is GRANTED as to West's Fifth Amendment and state constitutional claims. However, the motion is DENIED as to West's 42 U.S.C. § 1983 claim for violation of her First Amendment rights.

It is so ORDERED.

---

12. The Supreme Court's recent decision vacating the Seventh Circuit's prior decision was not handed down until after the parties' motions were filed and briefed in this case. Thus, Seventh Circuit interpretations were controlling at the time the Defendants acted. However, even though the Supreme Court stated that the Seventh Circuit gave insufficient weight to the government interest, the Court did not overturn the holding that an employee's First Amendment rights are violated when he or she is fired for speech of public concern that does not reasonably interfere with the efficiency of the office. *Waters*, ——— U.S. at ———, 114 S.Ct. at 1892, 128 L.Ed.2d 686 (Souter, J. concurring).

13. The fact that an employee was working when he or she spoke on the matter in question is not a distinguishing factor in determining if the speech was protected. *Conner*, 847 F.2d at 392.

14. Even if the Court applied the Defendants' standard for qualified immunity, a reasonable legislator would realize absolute immunity covers only legitimate legislative activities. A reasonable legislator would realize that terminating an employee for exposing the unethical behavior of a Representative would not be in furtherance of legislation.