948 F.2d 397
 Charles HANSEN, Plaintiff-Appellee,
v.
Gerald R. BENNETT, Individually and as Mayor of Palos Hills,
and Daniel Hurley, Individually and as then former
Police Chief of Palos Hills,
Defendants-Appellants.
 No. 90-3727.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 24, 1991.
Decided Nov. 27, 1991.
 
 Thomas J. Fleischmann, Steven R. Verr (argued), Gessler, Flynn, Fleischmann, Hughes & Socol, Chicago, for plaintiff-appellee.
 Michael D. Walsh, Ronald F. Neville, George Pappas (argued), Walsh, Neville, Pappas & Mahoney, Chicago, for defendants-appellants.
 Before CUDAHY and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 ESCHBACH, Senior Circuit Judge.
 
 
 1
 Charles Hansen has long been a political gadfly of Gerald Bennett, the mayor of Palos Hills, Illinois. On November 5, 1987, the Palos Hills city council held a meeting which was also a celebration of the city's youth, "Youth Turnabout Day." Hansen came to the meeting to discuss possible environmental hazards in the city. At one point, Hansen zealously pursued his differences with Bennett, and Bennett called Hansen out of order. Later in the meeting, during a portion open to comments from the general public on any topic, another citizen discussed the environmental issue with Bennett. A disturbance ensued, and Hansen again spoke out of order. Bennett ordered Hansen removed from the meeting, and Daniel Hurley, the Palos Hills police chief, executed that order. Hansen sued Bennett and Hurley, alleging that they had violated his rights under the First Amendment to the United States Constitution.[1]
 
 
 2
 The defendants[2] appeal the district court's denial of their motion for partial summary judgment on the grounds of qualified immunity and absolute legislative immunity. Hansen has moved to dismiss the appeal for lack of jurisdiction. In Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985), the Supreme Court held that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 ..." (emphasis added). In the case at hand, we cannot decide whether the defendants are entitled to qualified immunity without deciding a disputed question of fact. Consequently, we dismiss the qualified immunity appeal for lack of jurisdiction. We can decide the absolute immunity issue as a matter of law, however. Even under the defendants' view of the particular facts of this case, Bennett is not entitled to absolute immunity because he was not acting in a "legislative capacity." Rateree v. Rockett, 852 F.2d 946, 950 (7th Cir.1988). As a result, we affirm the denial of summary judgment on absolute immunity.
 
 Discussion
 
 3
 On this appeal of a denial of summary judgment, we evaluate the record de novo and determine whether we can decide each immunity question without resolving any disputed questions of fact. Jackson v. Elrod, 881 F.2d 441, 443 (7th Cir.1989). If we find that we cannot, then we lack jurisdiction over the appeal of that question.[3] See, e.g., Elliott v. Thomas, 937 F.2d 338, 342-43 (7th Cir.1991). If we can decide the issue as a question of law posed by undisputed facts, however, then we have jurisdiction. See, e.g., Hannon v. Turnage, 892 F.2d 653, 654 (7th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990).
 
 1. Qualified Immunity
 
 4
 Bennett's entitlement to qualified immunity depends on whether a reasonable person in his position, acting on his information and motivated by his purpose, would have known that ejecting Hansen violated his clearly established rights.[4] The district court held that it could not decide this question on summary judgment because of a disputed factual question regarding Bennett's purpose; was he suppressing speech on the basis of its content? We agree with the district court that there are facts on both sides of this question. For example, Bennett admitted in his affidavit that he did not approve of Hansen's brand of political activism. During the meeting, he complained that Hansen was "political" and had brought reporters to other meetings. Another individual who was extremely disruptive was not removed from the meeting. And perhaps most important, Bennett did not silence Hansen until he raised a particular topic. Other facts suggest that Bennett was not singling Hansen out. Hansen's outburst had disrupted and delayed the meeting. The city council had other business on its agenda. And Hansen had spoken on the same topic on other occasions.
 
 
 5
 Despite these contradictory facts, the defendants argue that their appeal cannot present a factual question because the record includes a tape recording and transcript of the city council meeting. As a result, the parties do not disagree about what Hansen said or did, what Bennett said or did, or what generally transpired at the meeting. Be that as it may, the record does not enable us to determine the factual issue of Bennett's intent; we would need a transcript of his thoughts for that. In so holding, we are mindful that "[s]ummary judgment is not defeated merely because issues of motive or intent are involved." Jackson v. Elrod, 881 F.2d at 443. We do not hold that Bennett's intent is metaphysically unknowable, but that there is a genuine factual dispute on the question.
 
 
 6
 Our recent decision in Elliott v. Thomas, 937 F.2d 338 (7th Cir.1991), is controlling. One defendant in Elliott contended that he was qualifiedly immune because he had not been involved in the events in question. Id. at 342. Another set of defendants claimed that the plaintiff's allegations were simply false. Id. at 343. After the district court denied both motions for qualified immunity, we dismissed the appeals because none of these defendants contended that they had acted "in the shadow of legal uncertainty." Rather, they raised factual disputes. Id. at 342-43. Like the Elliott defendants, Bennett and Hurley do not claim that their appeal turns on legal uncertainty. Rather, the issue in this appeal is whether Bennett intended to suppress Hansen's speech or whether he genuinely believed that the disruption justified Hansen's removal. If Bennett was attempting to suppress Hansen's speech on the basis of its content, then he violated clearly established rights and is not entitled to qualified immunity. Collinson v. Gott, 895 F.2d 994, 1000 (4th Cir.1990). If, on the other hand, he was enforcing an appropriately limited time, place, and manner restriction, then he did not violate clearly established rights, Jones v. Heyman, 888 F.2d 1328, 1332 (11th Cir.1989), and is immune. We lack jurisdiction over the issue of qualified immunity.
 
 2. Absolute Legislative Immunity
 
 7
 Bennett argues that he is entitled to absolute legislative immunity because he removed a disruptive person from a city council meeting so that the city's aldermen could proceed with the meeting and, ultimately, conduct legislative business. Bennett relies on the facts that he, as mayor, had a legislative power to break any tie in a vote among the aldermen, and that the council conducted legislative business later in the meeting. At the same time, Bennett does not dispute the fact that this portion of the meeting was open to any citizen's comment on any topic. Palos Hills Ordinance 716, Ex. C; Statement of Uncontested Facts at 3-4. As a result, this meeting contained elements of a "town meeting" as well as elements of a legislative session. Taking these undisputed facts, we are presented with a question of law: if a legislator acts to restore order to that portion of a city council meeting which is devoted to open comments from the general public, is that legislator entitled to legislative immunity?
 
 
 8
 The applicability of absolute immunity to enforcement of rules governing parliamentary procedure is an open question. To the best of our knowledge, no court has held that enforcing such rules is a legislative act.[5] What makes this case even more open is the fact that the Palos Hills city council meeting was not a pure legislative session; at the time Hansen was ejected, the citizenry was engaged in an open debate on non-legislative matters. As a result, we are faced with a difficult choice. If we accept the possibility of absolute immunity in this context, we risk extending absolute immunity to an activity which is not "a part of the legislative process itself." United States v. Brewster, 408 U.S. 501, 528, 92 S.Ct. 2531, 2545, 33 L.Ed.2d 507 (1972). This, the Supreme Court has never done. Id. Or, we can decline to extend absolute immunity to an act undertaken by a legislator within a governmental meeting in which legislative business was conducted. Although this has rarely been done, it is neither unprecedented nor illogical.[6] In making this choice, we bear in mind that "[t]he government official seeking immunity ... has the burden of showing that an exemption from personal liability is justified...." Rateree, 852 F.2d at 950.
 
 
 9
 Bennett cannot meet this burden. Neither his legislative powers nor the city council's subsequent legislative actions clothe Bennett with absolute immunity. We look only to the function Bennett was performing when he ejected Hansen. Forrester v. White, 484 U.S. 219, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988). We apply this functional approach even when evaluating conduct that takes place within a meeting which includes some legislative business. In Rateree v. Rockett, 852 F.2d 946 (7th Cir.1988), city employees alleged that three city commissioners had improperly approved a city budget that eliminated the employees' jobs. The employees argued that the commissioners were not entitled to legislative immunity because employment decisions are inherently administrative, notwithstanding the fact that the commissioners had eliminated the jobs by voting on legislation. Id. at 950. Chief Judge Bauer's opinion did not hold that the commissioners were immune because they had approved the budget during a legislative session. Rather, we looked at the commissioners' function when they executed the particular act at issue: "[t]o the extent that the commissioners act in their legislative capacity, they are protected; when they act administratively, they are not." Id. at 951. Because the challenged action was a vote on legislation, we held that the commissioners had acted in their legislative capacity and were absolutely immune. Id. After Rateree, Bennett, even if he has legislative powers and was acting within a session which later conducted legislative business, is entitled to legislative immunity only if he was acting in his "legislative capacity." Id. at 950. See also Mireles v. Waco, 1991 WL 171242, 60 U.S.L.W. 3161 (1991) (applying functional approach to judicial order made within courtroom).
 
 
 10
 The Supreme Court has construed the legislative capacity narrowly, holding that legislative immunity "does not prohibit inquiry into activities that are casually or incidentally related to legislative affairs but not a part of the legislative process itself." Brewster, 408 U.S. at 528, 92 S.Ct. at 2545 (emphasis added). In so holding, the Court noted that it has accorded legislators absolute immunity only when they were voting on a resolution,[7] speaking on legislation or in a legislative hearing,[8] or subpoenaing records for use in a legislative hearing.[9] Cases subsequent to Brewster, both in the Supreme Court and in this Circuit, have continued to limit legislative immunity to these narrow functions.[10]
 
 
 11
 Applying these standards, we can decide the present question on summary judgment.[11] The facts indicate that the city council meeting had elements of a "town meeting" as well as elements of a legislative session. The meeting was in its "town meeting" phase when Hansen was ejected.[12] That portion of the meeting was open to participation from the general public. "[A]ny citizen" was allowed to speak on any issue, including issues not on the agenda, as long as he or she was recognized by the chair. Palos Hills Ordinance 716, Ex. C; Statement of Uncontested Facts at 3-4. Indeed, before Hansen was ejected, a presiding officer had announced, "The meeting is now open to the general public." Transcript of Meeting at 16. Moreover, during this portion the citizens were not limited to discussing legislative issues,[13] and the aldermen were not considering any legislation or investigating any legislation. They did not conduct legislative business until another portion of the meeting, after an officer had closed the open portion and announced that the meeting would proceed with the agenda. Tape Recording of Meeting. In sum, this portion of the meeting was not legislative. In addition, Bennett's action was not legislative. He was not voting, speaking on legislation, or investigating a legislative issue. On these narrow facts, we cannot say that restoring order to the meeting was "a part of the legislative process itself." Bennett's act was at most "incidentally related" to legislative business. Brewster, 408 U.S. at 528, 92 S.Ct. at 2545. Consequently, we hold that when Bennett regulated an open public discussion of various issues, he was not acting in a legislative capacity.
 
 
 12
 We emphasize the narrow holding of this case. This would be a different case if the city council meeting had been a purely legislative session. If, for example, Hansen had disrupted the city council (or a subcommittee thereof) while its members were voting on legislation, debating legislation among themselves, or holding a legislative hearing or investigation, Bennett might well be entitled to absolute immunity for ejecting him. In the recent case of Mireles v. Waco, a state judge argued that he was absolutely immune for ordering police officers to seize a public defender whose absence was delaying the initial call of the judge's calendar. In a 5-3 per curiam decision, the Supreme Court held that the judge's order was taken in his judicial capacity because the defender "was called into the courtroom for purposes of a pending case...." 1991 WL 171242 at 2. Mireles thus amounts to a holding that an act which preserves the judicial process may be judicial. See also Valdez v. City and County of Denver, 878 F.2d 1285 (10th Cir.1989) (granting judicial immunity to law enforcement officials who executed judge's order to eject unruly spectator from courtroom). Bennett would have us extend the logic of Mireles and Valdez from judicial immunity to legislative immunity and hold that an act which preserves the legislative process is legislative. For this proposition, Bennett relies on Schultz v. Sundberg, 759 F.2d 714 (9th Cir.1985), and Collinson v. Gott, 895 F.2d 994 (4th Cir.1990). In Schultz, Alaska state legislators were boycotting the legislature. The boycott prevented the legislature from forming a quorum, which was necessary for the legislature to approve the governor's new appointees. The "presiding officer of the joint session" ordered law enforcement officials to compel some legislators to attend, and, in turn, one of those legislators sued the presiding officer. The Ninth Circuit held that the presiding officer was legislatively immune for compelling fellow legislators to attend a legislative session. The defendant's acts were legislative because they involved "an effort to convene a joint session. The business before the Legislature ... was clearly legislative in nature." Id. at 717 (quoting 577 F.Supp. 1491, 1495 (D. Alaska 1984)). In Collinson, a local official had ejected a citizen from a "public hearing." Judge Wilkinson's concurrence argued that a local official should be absolutely immune for enforcing rules of parliamentary procedure during a public hearing.[14] 895 F.2d at 1005. The official's acts were legislative because he was trying to preserve order in a public hearing which concerned "specific plans" under consideration by the local Board of Commissioners. Id. at 995. Judge Wilkinson's concurrence and Schultz arguably stand for the proposition that an act which preserves the legislative process is legislative. Even if we so held, however, we could not say that Bennett's act preserved the legislative process. Unlike the officials in Schultz and Collinson, Bennett's acts concerned a portion of a meeting having no direct connection to legislation.
 
 
 13
 Because the Palos Hills city council meeting included a mixture of legislative, executive, and administrative functions, as well as open discussions akin to a public forum, we have had to draw some fine lines in this case. But that is the nature of the absolute immunity beast. "Although this line drawing is often difficult, it preserves the balance between inhibiting public officials from exercising their essential duties and protecting victims of wrongs committed by public officials." Rateree, 852 F.2d at 951. In Rateree, the employees argued that because the individual commissioners had executive as well as legislative powers, they could never benefit from legislative immunity. 852 F.2d at 951. Chief Judge Bauer's opinion rejected this argument, refusing to promulgate "a broad, per se rule which eliminates all immunity for the commission form of government." Id. In the present case, Bennett also mixes executive and legislative functions. If we were to grant Bennett absolute immunity for an act which had only an incidental connection to legislation, then we would effectively cloak everything undertaken by mayors in city council meetings with absolute immunity. Just as we declined to promulgate a per se rule eliminating all legislative immunity for the commission form of government in Rateree, we decline to promulgate a per se rule granting blanket legislative immunity for the mayoral form of government adopted by Palos Hills. Statement of Uncontested Facts at 11. Recognizing that Palos Hills city council meetings consist of discrete portions will not prevent Bennett from benefiting from legislative immunity under the appropriate circumstances. Rather, we are simply confining legislative immunity to those portions of the meetings which are in fact legislative. Palos Hills remains free to conduct legislative business during those portions, City of Madison, 429 U.S. at 175 n. 8, 97 S.Ct. at 426 n. 8, and, accordingly, Bennett may be entitled to legislative immunity for his actions during them.
 
 
 14
 This holding is consistent with the purposes of legislative immunity. The Supreme Court has admonished that when deciding claims of absolute immunity, we must concentrate on an official's function so as "not to extend the scope of the protection further than its purposes require." Forrester, 108 S.Ct. at 542. The purpose of legislative immunity is to "protect the integrity of the legislative process by insuring the independence of individual legislators." Brewster, 408 U.S. at 507, 92 S.Ct. at 2535. In this case, we cannot see how Bennett's independence as a legislator--his ability to vote and speak freely on legislative matters--is implicated. What is implicated is Bennett's discretion to govern public speech. This exercise of discretion is better protected by qualified immunity.[15]
 
 Conclusion
 
 15
 We cannot decide whether the defendants are entitled to qualified immunity without deciding the disputed factual issue of Bennett's intent. As a result, that portion of this appeal relating to the qualified immunity question is DISMISSED for want of jurisdiction. In addition, we agree with the district court that Bennett was not acting in a legislative capacity when he ejected a citizen from that portion of a city council meeting which was devoted to public comment on numerous issues. Consequently, the district court's denial of summary judgment on absolute immunity is AFFIRMED.
 
 
 
 [1]
 Hansen brought other claims as well. This appeal concerns only whether the defendants are immune for ejecting Hansen from the meeting, however, and thus relates only to the First Amendment claim
 
 
 [2]
 The district court did not consider whether Hurley might be entitled to immunities even if Bennett is not. Moreover, it is not clear whether appellants are arguing that this is the case. As a result, this question is not presented on appeal. Nor is the question whether the defendants have state-law immunity regarding Hansen's pendent claims
 
 
 [3]
 This rule presents a curious situation. If a district court denies summary judgment because it finds a factual dispute, and the appellate court agrees, then the appellate court is forced to hold that it lacks jurisdiction. As a result, it is impossible for an appellate court to affirm such a ruling. Though curious, this situation makes sense. Dismissing the appeal is equivalent to affirming the denial; either way, the case and the issue proceed to trial. The situation seems curious only because we do not often face it outside the context of immunities, as denials of summary judgment are not ordinarily appealable. United States for Use of Valders Stone & Marble, Inc. v. C-Way Const. Co., 909 F.2d 259, 261 (7th Cir.1990)
 
 
 [4]
 Framing this question involves a conundrum. The conundrum begins with Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), which eliminated the subjective component of qualified immunity by holding that "government officials performing discretionary functions generally are shielded from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." After Harlow, evidence of a government official's bad motive is generally irrelevant to the question of qualified immunity. In some cases, however, the defendant's "mental state is part of the definition of the wrong." Elliott v. Thomas, 937 F.2d at 344. In a First Amendment claim like Hansen's, proving that the official violated clearly established First Amendment rights requires the plaintiff to prove that the official intended to suppress speech on the basis of its content. If the plaintiff's evidence of motive is irrelevant, then he cannot survive summary judgment. In Collinson v. Gott, 895 F.2d 994 (4th Cir.1990), Judge Phillips resolved this conundrum. Gott, a governmental official, had ejected Collinson, a disputatious citizen, from a public hearing. The district court denied the official's motion for summary judgment. On appeal, Judge Phillips recognized that the Harlow Court could not have intended to bar every claim that required proof of the defendant's mental state. As a result, he imported the intent requirement inherent in a First Amendment claim into Harlow's objective standard: Gott had to show that "a reasonable person in Gott's position, that is, one acting on Gott's information and motivated by Gott's purpose," would have known that ejecting Collinson violated his clearly established rights. Id. at 1001. Moreover, Judge Phillips safeguarded the policy animating Harlow--allowing officials to benefit from immunity on summary judgment unless the plaintiff can do more than allege bad motive--by requiring Collinson to produce "specific evidence" of intent, not merely unsupported allegations. Id. at 1002-4. The Seventh Circuit has, in essence, followed this approach. See Elliott, 937 F.2d at 346
 
 
 [5]
 Similar cases have been decided on other grounds. See, e.g., Musso v. Hourigan, 836 F.2d 736, 738 (2nd Cir.1988) (when Board of Education members ejected citizen who had interrupted meeting, court did not mention legislative immunity); Wright v. Anthony, 733 F.2d 575, 577 n. 3 (8th Cir.1984) (when congressman ordered witness in public hearing to conclude testimony, court upheld restriction on the merits, without reaching legislative immunity defense); Jones v. Heyman, 888 F.2d 1328 (11th Cir.1989) (when mayor ejected citizen from public meeting of city commission, court upheld restriction on the merits); Collinson v. Gott, 895 F.2d 994 (4th Cir.1990) (when president of board of county commissioners ejected citizen from public hearing, parties did not argue issue of legislative immunity (although concurring judge decided case on that ground))
 
 
 [6]
 In Chambers v. Marsh, 675 F.2d 228 (8th Cir.1982), rev'd on other grounds, 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983), the plaintiff challenged the Nebraska state legislature's practice of compensating a chaplain to open each legislative session with a prayer. The state defended on the ground, inter alia, of legislative immunity. The Eighth Circuit held that enacting and enforcing rules regarding the prayer and payment of the chaplain were not legislative acts for purposes of absolute immunity. The court reasoned that "no speech activity by any legislator is at issue"; "the deliberative process of the legislature will not be impaired" by the claim; and the "prayer practice ... bears no substantive relation to the process of enacting legislation." Id. at 232
 We also note that a "physical assault of one member of Congress upon another" does not appear to be a legislative act. Laurence H. Tribe, American Constitutional Law § 5-18 at 371 n. 9 (Foundation, 2d ed. 1988). Finally, if we held that legislative immunity covered every act undertaken within a legislative session, whether legislative in function or not, we would violate the Supreme Court's admonition "not to extend the scope of [legislative immunity] protection further than its purposes require." Forrester v. White, 484 U.S. 219, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988).
 
 
 [7]
 See Kilbourn v. Thompson, 103 U.S. 168, 26 L.Ed. 377 (1880); Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)
 
 
 [8]
 See United States v. Johnson, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966); Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951)
 
 
 [9]
 See Dombrowski v. Eastland, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967)
 
 
 [10]
 See, e.g., Gravel v. United States, 408 U.S. 606, 615-16, 622-27, 92 S.Ct. 2614, 2622-23, 2625-28 (1972) (immunity for introducing Pentagon Papers into public record during subcommittee hearing, but not for arranging private publication); Doe v. McMillan, 412 U.S. 306, 312-13, 93 S.Ct. 2018, 2024-25, 36 L.Ed.2d 912 (1973) (immunity for preparing subcommittee report and voting for publication of report); Hutchinson v. Proxmire, 443 U.S. 111, 123-133, 99 S.Ct. 2675, 2682-87, 61 L.Ed.2d 411 (1979) (no immunity for issuing defamatory press releases and newsletters); Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) (immunity for voting on ordinance); Reed v. Village of Shorewood, 704 F.2d 943, 952-53 (7th Cir.1983) (immunity for voting on ordinance); Rateree v. Rockett, 852 F.2d 946, 951 (7th Cir.1988) (immunity for voting on budget)
 
 
 [11]
 We note that the district court did not hold that disputed factual issues prevented the issue from being resolved on summary judgment. Rather, the court held that Bennett was not acting as a legislator when he ordered Hansen's removal from the council chambers during the open portion of the meeting. Moreover, the district court noted that the council meeting was not a "legislative session" because the aldermen were not engaged in the process of making laws. We agree with the district court that the portion of the meeting when Hansen was thrown out was not a legislative session
 
 
 [12]
 A city meeting which includes legislative business is not necessarily a legislative session for all purposes and at all moments. The Eleventh Circuit has recognized that a portion of a "city commission meeting" may constitute a "public forum" for First Amendment purposes "when the commission intentionally opened it to the public and permitted public discourse on agenda items." Jones v. Heyman, 888 F.2d 1328, 1331 (11th Cir.1989); see also City of Madison, Joint School District No. 8 v. Wis. Emp. Rel. Com'n, 429 U.S. 167, 174-76, 97 S.Ct. 421, 425-27, 50 L.Ed.2d 376 (1976) (holding state restriction on speech during school board meetings unconstitutional because "the State opened a forum for direct citizen involvement" by holding a meeting which was "open to the public")
 
 
 [13]
 The environmental matter which Hansen wished to discuss was not legislative. Hansen wanted the mayor to disclose information on whether a particular site was dangerous. To that end, he requested that the mayor read publicly a letter from the "Federal Super-Fund Program." Trans. at 11. Communication by a legislator to his or her constituents is not legislative activity for purposes of legislative immunity. Hutchinson v. Proxmire, 443 U.S. at 130-33, 99 S.Ct. at 2685-87
 
 
 [14]
 Cf. Wright v. Anthony, 733 F.2d 575, 577 n. 3 (8th Cir.1984) (when congressman ordered witness in public hearing to conclude testimony, court upheld restriction on the merits, without reaching legislative immunity defense); Musso v. Hourigan, 836 F.2d 736, 738 (2nd Cir.1988) (no consideration of legislative immunity when Board of Education members ejected citizen who had interrupted meeting, even though meeting "had progressed beyond the point during which the Board was obliged, by virtue of its bylaws, to entertain questions and comments from the public")
 
 
 [15]
 Collinson v. Gott, 895 F.2d at 997 n. 1 (when parties did not argue issue of absolute immunity, Judge Phillips accepted "the parties' assumption" that "while presiding over a public meeting an official ... is exercising discretionary powers in an executive function," and therefore, "may be entitled ... to qualified immunity"); Harlow v. Fitzgerald, 457 U.S. at 807, 102 S.Ct. at 2732