**Ira Iglesia de la Biblia ABIERTA,**
**Plaintiff,**

**v.**

**CITY OF CHICAGO, et al., Defendants.**

**No. 96 C 3487.**

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 6, 1996.

John W. Mauck, Paul B. O'Flaherty, Jr., Mauck, Bellande, Baker & O'Connell, Chicago, IL, for plaintiff.

Gail A. Niemann, Susan Haerr Zucker, City of Chicago, Law Dept., Corporation Counsel, Chicago, IL, Kara Michelle Washington, Susan S. Sher, City of Chicago, Law Dept., Chicago, IL, for defendants.

### *MEMORANDUM OPINION*

GRADY, District Judge.

Before the court is the motion of defendants City of Chicago and William Banks to dismiss the complaint for failure to state a claim for which relief could be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated in this opinion, the motion is granted in part and denied in part.

### *BACKGROUND*

The plaintiff's allegations, which we treat as true and view in a light most favorable to the plaintiff for the purposes of this motion, are as follows. Plaintiff Ira Iglesia de la Biblia Abierta ("Abierta") is a church incorporated as an Illinois not-for-profit corporation, whose members live in Chicago and surrounding suburbs and are predominantly of Hispanic origin. The defendant City of Chicago is a municipal corporation which enforces a zoning ordinance enacted in 1957 that governs the use of every property within the City. Defendant William Banks is the alderman of the 36th Ward of the City of Chicago, and at relevant times was the chairman of the Committee on Zoning of the Chicago City Council.

On June 20, 1994, Abierta entered into a contract with Ronald and Margo Sersen for the purchase of real property located at 6466 West North Avenue, Chicago ("6466 West North"). The 6466 West North property consists of a lot with dimensions of 25 feet by 179 feet on which is situated a one-story stone face building approximately 1,600 square feet in area. Abierta contracted to purchase the property for use as a place of assembly for worship, religious instruction, prayer meetings, church dinners, youth activities, administration and religious ceremonies, including baptisms, weddings and funerals.

As of June 1994, 6466 West North was zoned B4–1 under Title 17 of the Municipal Code of Chicago ("Chicago Zoning Ordinance"). A B4–1 designation allows use by churches, subject to obtaining a special use permit from the City's Zoning Board of Appeals ("ZBA"). Abierta's contract to purchase 6466 West North was contingent upon the congregation obtaining a special use permit to use the property as a church. Shortly after entering into the contract to purchase 6466 West North, Abierta filed an application with the ZBA for a special use permit to use the property as a church facility with a capacity of 48 persons. On or about July 22, 1994, the ZBA scheduled a hearing on Abierta's special use permit for August 19, 1994.

When the ZBA receives a special use permit application, it often notifies the alderman of the ward involved. As a matter of custom and practice, the ZBA welcomes the testimony or written comments of the alderman as to whether such permits should be granted and gives weight to the testimony or comments. Defendant William Banks is the alderman of the 36th Ward, where 6466 West North is located. In June or July of 1994, Banks became aware that Abierta had a contract to purchase 6466 West North and had applied to the ZBA for a special use permit. Before August 18, 1994, Banks introduced an ordinance to amend the Chicago Zoning Ordinance to rezone the property at 6466 West North. The proposed zoning ordinance did not reclassify any other property. It sought to rezone 6466 West North from a B4-1 (Restricted Business District) to an M1-2 (Restricted Manufacturing District). The M1-2 District does not allow use of the property for a church either by right or by special use permit. The owner of 6466 West North had not asked Banks or any city official to rezone the property to a manufacturing zone.

The plaintiff alleges that Banks knew when he introduced the rezoning ordinance that Abierta had a pending contract to purchase 6466 West North. The plaintiff also alleges that Banks knew the effect of rezoning the property to M1-2 was that Abierta could no longer acquire it for use as a church.

On August 18, 1994, Banks and the other aldermen on the city council Committee on Zoning voted to recommend the approval of the rezoning ordinance to change 6466 West North from B4-1 to M1-2. The next day, August 19, 1994, the ZBA continued its hearing on Abierta's special use application to September 15, 1994. On September 15, 1994, the City Council voted to enact the rezoning ordinance, which changed 6466 West North to a M1-2 zoning status. As a result of the ordinance, the ZBA could no longer grant Abierta the special use permit to use the parcel as a church, and the ZBA advised Abierta of this at the continued hearing on September 15, 1994. As a result of these rezoning actions, Abierta was unable to purchase the property at 6466 West North for use as a church.

On June 13, 1996, Abierta filed this eighteen-count complaint against the defendants City of Chicago and Banks, alleging that the defendants applied the zoning laws against it in a discriminatory manner in violation of the United States and Illinois Constitutions and federal law. In Counts I and II, the plaintiff alleges that the City and Banks substantially burdened its exercise of religion in violation of the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb *et. seq.* In Counts III and IV, the plaintiff alleges that the City and Banks denied it equal protection under the Fourteenth Amendment, because the church's exercise of First Amendment rights of free speech and assembly was more restricted by the zoning ordinance than similarly situated secular groups such as clubs and community centers. In Counts V through VIII, the plaintiff alleges that the City and Banks unconstitutionally impaired its rights to freedom of assembly and freedom of speech under the First Amendment, as incorporated against the states by the Fourteenth Amendment. In Counts IX through XIV, the plaintiff alleges that the City and Banks infringed upon its rights to freedom of religion, speech and assembly under Article I of the Illinois Constitution. In Counts XV and XVI, the plaintiff alleges that the City and Banks denied it equal protection in the exercise of its rights of freedom of religion, assembly and speech under Article I of the Illinois Constitution. In Counts XVII and XVIII, the plaintiff alleges that the City and Banks discriminated against it in the sale of property in contravention of Article I, Section 17 of the Illinois Constitution. Plaintiff requests relief in the form of compensatory damages, punitive damages, attorney fees and costs.

The City and Banks have moved to dismiss the complaint in its entirety on several grounds.

*DISCUSSION* [1]

In deciding a motion to dismiss, the court must assume the truth of all facts alleged in

---

1. We note at the outset of our discussion that the issues in this case closely resemble those discussed in the recent memorandum opinion of

the complaint, construing the allegations liberally and viewing them in the light most favorable to the plaintiff. *Jones v. General Electric Co.*, 87 F.3d 209, 211 (7th Cir.1996); *Wilson v. Formigoni*, 42 F.3d 1060, 1062 (7th Cir.1994). Dismissal is properly granted " 'if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Cushing v. City of Chicago*, 3 F.3d 1156, 1159 (7th Cir. 1993) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).

### Legislative Immunity

 Defendants contend that any claims against Banks are barred by the doctrine of absolute legislative immunity. Under Seventh Circuit precedent, local legislators are absolutely immune from suit for their legislative acts. *Reed v. Village of Shorewood*, 704 F.2d 943, 952–53 (7th Cir.1983); *Rateree v. Rockett*, 852 F.2d 946, 949 (7th Cir.1988). However, administrative or executive acts of legislators, such as employment decisions, are not protected. *Rateree*, 852 F.2d at 950. The defendants argue that zoning is indisputably a legislative function, and Banks should have absolute immunity for his introduction of the rezoning ordinance. *See Coniston v. Village of Hoffman Estates*, 844 F.2d 461, 468 (7th Cir.1988) (holding that zoning is a legislative, not an adjudicative function). The defendants also contend that because zoning is legislative, any action relating to the zoning process undertaken by a zoning decisionmaker is protected by absolute immunity. This sweeping assertion of absolute legislative immunity oversteps the Supreme Court's boundaries for the doctrine. The Court instructs that legislative immunity applies only to acts which are part of the legislative process itself, such as voting, and does not extend into activities "that are casually or incidentally related to legislative affairs...." *United States v. Brewster*, 408 U.S. 501, 528, 92 S.Ct. 2531, 2545, 33 L.Ed.2d 507 (1972). Based on plaintiff's allegations, which we accept as true for purposes of this motion, we cannot find that Banks' activity with respect to Abierta is protected by absolute legislative immunity.

The complaint alleges that Banks' activity with respect to the 6466 West North rezoning was administrative or executive in nature because it solely targeted Abierta to prevent the church from locating there. Abierta alleges that Banks requested that the ZBA postpone its hearing on the special use permit. This action falls outside the protection of absolute legislative immunity. *See Hansen v. Bennett*, 948 F.2d 397, 402 (7th Cir. 1991). In *Hansen*, the Seventh Circuit noted that absolute legislative immunity was limited to narrow functions such as voting, speaking in a legislative session or hearing, and subpoenaing records for use in a hearing. *Id.* The *Hansen* court held that the defendant mayor was not entitled to absolute legislative immunity for his actions in ordering the plaintiff removed from an open public meeting, because he was not acting in a legislative capacity. *Id.* Similarly, on this motion to dismiss, we cannot hold that Banks is entitled to absolute legislative immunity for his informal request to the ZBA to postpone the special use permit hearing. The same request could have been made by anyone. Banks' status as an alderman may well have lent weight to his request, but this does not mean that his making the request was the exercise of a legislative function.

Abierta also alleges that Banks' rezoning actions were administrative or executive, and not legislative, because they were directed solely at Abierta, and not intended to apply to the general community. *See Bateson v. Geisse*, 857 F.2d 1300, 1304 (9th Cir.1988). In *Bateson*, the Ninth Circuit affirmed the district court holding that local legislators were not entitled to absolute immunity from a § 1983 claim over an individual building permit decision, because it was an executive, not legislative, action. *Id.* The Ninth Circuit reasoned that the individualized decision did not apply to the general community, and as such was more executive than legislative, thus not subject to legislative immunity. *Id.* Here, the plaintiff alleges that the rezoning reclassified only 6466 West North as a manufacturing zone, not any of the adjoining or surrounding property. The rezoning was proposed by Banks and passed by the Coun-

Judge Andersen in *C.L.U.B. v. City of Chicago*, 1996 WL 89241, (N.D.Ill. Feb. 27, 1996).

cil only after Abierta had contracted to purchase the property and applied for the special use permit. These acts are similar to what the Ninth Circuit held would not receive legislative immunity in *Bateson,* and what Judge Anderson held would not receive legislative immunity in *C.L.U.B. See C.L.U.B.,* 1996 WL 89241, at * 18. Accordingly, were we to adopt that reasoning, defendants' motion to dismiss Alderman Banks under the doctrine of absolute legislative immunity would be denied on that ground as well.[2]

### Counts I and II—Religious Freedom Restoration Act (RFRA)

In Counts I and II, the plaintiff alleges that the City and Banks substantially burdened its exercise of religion in violation of the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb *et. seq.* ("RFRA" or "the Act") by rezoning 6466 West North to exclude its use as a church. Specifically, Abierta argues that its ability to conduct its various religious activities is significantly burdened by its inability to use 6466 West North as a church. The defendants contend in their motion to dismiss that the plaintiff fails to state a claim under RFRA that its exercise of religion has been substantially burdened.

Under RFRA, the government "may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb–1(b).[3] The Act was motivated by a desire to supersede the Supreme Court's decision in *Employment Division v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), which held that the free exercise clause of the First Amendment allows the government to enforce a law of general applicability against religiously motivated conduct (which, in *Smith,* was enforcing federal drug law against the use of

peyote in Native American religious rituals). With RFRA, the Congress sought to return the courts to the approach taken before *Smith* in interpreting a law burdening religious observance. *See Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). If the law or governmental action is found to burden substantially the free exercise of religion, the government must demonstrate that it has a compelling governmental interest in the regulation causing such a burden and that the interest could not be protected by a less restrictive means. In the case before us, the City and Banks contend that the plaintiff has failed to allege facts to show that the rezoning acts are a substantial burden or that, in any event, they are not substantially related to a compelling governmental interest and are not the least restrictive means of promoting that interest.

According to the Seventh Circuit, a substantial burden under RFRA "is one that forces the adherents of a religion to refrain from religiously motivated conduct, inhibits or constrains conduct or expression that manifests a central tenet of a person's religious beliefs, or compels conduct or expression that is contrary to those beliefs." *Mack v. O'Leary,* 80 F.3d 1175, 1179 (7th Cir.1996). *Mack* involved consolidated prisoner appeals seeking damages for violation of RFRA in limiting religious observances such as meals and prayer meetings. The district courts had dismissed the cases for failure to demonstrate a substantial burden on the plaintiffs' religion. *Id.* In adopting what it termed the "generous" approach for establishing a substantial burden under RFRA, the Seventh Circuit reversed and remanded one case, Mack, in which the plaintiff had stated a claim by alleging a substantial burden on the exercise of his religious rights by the defendants. *Id.* at 1180. Mack claimed that the prison had refused to accommodate the religious rituals of himself and the other Muslim

---

2. We are not persuaded that an act cannot be legislative in character unless it is directed to the general community, and therefore do not rely on this theory to deny the motion.

3. We note that although the defendants sought to challenge RFRA's constitutionality in their motion, the Seventh Circuit upheld RFRA's constitutionality two days after the defendants filed their opening brief, in *Sasnett v. Sullivan,* 91 F.3d 1018 (7th Cir.1996).

prisoners during Ramadan. *Id.* at 1177. Their group meals were served in a filthy mess hall after the main meal, so that they could not prostrate themselves for prayer during their ceremony. Mack also alleged that the manner in which the tables were bolted together made it impossible for the diners to sit facing Mecca or to pray in the prescribed close formation. *Id.* The Seventh Circuit held that these claims alleged a substantial burden on Mack's religious beliefs under RFRA sufficient to survive a motion to dismiss. *Id.* at 1179–80.

 Under the Seventh Circuit's "generous" construction of the substantial burden test of RFRA, we find that the plaintiff has stated a claim that the defendants' acts up to and including the rezoning of 6466 West North have substantially burdened the exercise of the plaintiff's religious rights. Plaintiff has alleged that the rezoning substantially burdened the church's ability to worship and conduct religious instruction, prayer meetings, and religious ceremonies, including baptisms, weddings, and funerals. The plaintiff alleges that 6466 West North was an appropriate physical facility for the congregation's weekly worship and other activities, and by losing the property, the church's religious practices have been substantially burdened. These allegations of substantial burden are sufficient to withstand a motion to dismiss. However, we note that the ultimate burden under RFRA remains on the plaintiff "to prove that a governmental [action] burdens the adherent's practice of his or her religion.... This interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." *Bryant v. Gomez,* 46 F.3d 948, 949 (9th Cir. 1995). It may be that the availability of other equally suitable locations, for instance, would undercut plaintiff's claim of substantial interference, but that is a factual question to be determined at trial. Because we find that the plaintiff has stated a claim of substantial burden upon the free exercise of its religious rights, we do not need to address at this time

whether the defendants' rezoning of 6466 West North furthers a compelling governmental interest or is the least restrictive means of furthering that interest. Whether a government interest is compelling is a question of fact, not properly decided on a motion to dismiss. *Sasnett v. Wisconsin Dep't of Corrections,* 891 F.Supp. 1305, 1315 (W.D.Wis.1995), *affirmed sub nom., Sasnett v. Sullivan,* 91 F.3d 1018 (7th Cir.1996). For these reasons, the defendants' motion to dismiss Counts I and II is denied.

### Counts IX and X—Freedom of Religion

 In Counts IX and X, the plaintiff alleges that the City and Banks infringed upon its rights to freedom of religion under Article I of the Illinois Constitution. The defendants have moved to dismiss these counts, arguing that the rezoning does not infringe the plaintiff's freedom of religion under the federal or Illinois Constitutions.[4] We have already determined that plaintiff has sufficiently alleged a substantial burden on the free exercise of its religion in our RFRA analysis. For the reasons set forth above for Counts I and II, the defendants' motion to dismiss Counts IX and X is denied.

### Counts III–IV and XV–XVI—Equal Protection

 In Counts III and IV, the plaintiff alleges that the City and Banks denied it equal protection under the Fourteenth Amendment in the exercise of its First Amendment rights. In Counts XV and XVI, the plaintiff alleges that the City and Banks denied it equal protection in the exercise of its rights of freedom of religion, assembly and speech under Article I of the Illinois Constitution. The basis of the plaintiff's claim is that clubs, lodges, community centers, colleges and other gathering places are allowed to locate in most B and C districts under the zoning ordinance, while churches are required to obtain special use permits for those districts. The plaintiff alleges that the Chicago Zoning Ordinance denies it equal

---

**4.** While the protection of these liberties under the Illinois Constitution may be broader than that provided by the federal Constitution, we analyze free exercise claims under the Illinois

Constitution using standards from federally-derived free exercise jurisprudence. *C.L.U.B.,* 1996 WL 89241, at * 22.

protection of the laws by placing additional burdens on churches than substantially similar groups because of a suspect distinction based on religion. The defendants have moved to dismiss all of these counts, arguing that the plaintiff fails to state an equal protection claim because the Chicago Zoning Ordinance makes its land use classifications a legitimate exercise of the police power, the zoning ordinance serves a compelling government interest, and the ordinance employs the least restrictive means to achieve that interest. We analyze the equal protection claims brought under the Illinois Constitution under the same standards as equal protection claims under the federal Constitution. *C.L.U.B.*, 1996 WL 89241, at * 23.

■ The Equal Protection Clause of the Fourteenth Amendment mandates that no state shall "deny to any person within its jurisdiction the equal protection of the laws." The Supreme Court reads the clause as "a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). The Supreme Court has also set out the applicable standards for determining the validity of state legislation under the Clause:

> Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classifications challenged be rationally related to a legitimate state interest.

*City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976). If the legislative classification disadvantages a suspect class, such as a religious group, then courts may uphold the classification only if it is narrowly tailored to serve a compelling governmental interest. *Plyler v. Doe*, 457 U.S. 202, 216–17, 102 S.Ct. 2382, 2394–95, 72 L.Ed.2d 786 (1982).

■ The plaintiff alleges that the Chicago Zoning Ordinance disadvantages its fundamental rights based upon religion, because it treats churches differently from similarly situated groups such as clubs, lodges, community centers and colleges in the ability to use land. Plaintiff alleges that the other non-profit groups use property in the same ways churches do, such as for meetings, socializing, singing, eating and other gatherings of people. The plaintiff alleges that the other groups are permitted in M districts, while churches are not. The plaintiff has also alleged that those groups may locate in B and C districts, while churches require special use permits. The plaintiff has alleged sufficient similarity between itself and the groups who may occupy with special use permits in M districts and without special use permits in B and C districts. The plaintiff has adequately alleged that the differing treatment is based upon a suspect classification, and impacts on fundamental rights. We find the plaintiff has stated an equal protection claim, and we deny the defendants' motion to dismiss Counts III, IV, XV, and XVI.

### Counts V–VIII and XI–XIV—Freedom of Speech and Assembly

In Counts V through VIII, plaintiff alleges that the City and Banks impaired its First Amendment right to freedom of assembly and freedom of speech. In Counts XI through XIV, plaintiff alleges that the City and Banks impaired its rights to freedom of speech and assembly under Article I of the Illinois Constitution. The defendants have moved to dismiss these counts, arguing that plaintiff fails to state any First Amendment or Illinois constitutional claim because the Chicago Zoning Ordinance is a valid time, place and manner restriction that does not regulate religious beliefs.

■ We treat First Amendment claims for freedom of speech and freedom of assembly alike. *New York State Club Association, Inc. v. City of New York*, 487 U.S. 1, 13, 108 S.Ct. 2225, 2234, 101 L.Ed.2d 1 (1988). We also analyze First Amendment claims under the federal and Illinois constitutions together. *C.L.U.B.*, 1996 WL 89241, at * 25. Because churches can locate as a matter of right or by special permit in parts of the City other than M districts, the Chicago Zoning Ordinance is properly analyzed as a time, place and manner restriction on freedom of speech and assembly. *See City of*

*Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986). To sustain a valid time, place and manner restriction on First Amendment activities, the government must show that the restriction: (1) is content neutral, (2) serves a legitimate governmental objective, (3) leaves open ample alternative channels of communication, and (4) is narrowly tailored to serve the governmental objective. *City of Watseka v. Illinois Public Action Council*, 796 F.2d 1547, 1552 (7th Cir.1986); *see also Renton*, 475 U.S. at 46, 106 S.Ct. at 928. When a time, place and manner restriction aims to restrict the secondary effects of speech, and not the content of speech, the restriction is valid. Alternative channels of communication must be ample and adequate. *Watseka*, 796 F.2d at 1553. The requirement of narrow tailoring is satisfied when the regulation promotes a compelling governmental interest that would be achieved less effectively absent the regulation. *Graff v. City of Chicago*, 9 F.3d 1309, 1321 (7th Cir.1993).

 The City contends that its zoning ordinance does not regulate churches on the basis of religious beliefs, and that the ordinance provides churches with more than adequate alternative channels of communication. We agree that churches have ample alternative channels of communication, because they can locate as of right in R districts in more than 40 percent of the City. But the City has not established that the ordinance is content neutral. Nor, on a motion to dismiss, can the City establish whether its interest in preventing churches from locating in M districts or requiring churches to have permits in B and C districts is compelling and narrowly tailored, because that is a factual question. Therefore, the City cannot establish now that its Zoning Ordinance is a valid time, place, and manner restriction of speech and assembly. Accordingly, the defendants' motion to dismiss Counts V, VI, VII, VIII, XI, XII, XIII, and XIV is denied.

### Counts XVII and XVIII—Discrimination in the Sale of Property

 In Counts XVII and XVIII, the plaintiff alleges that the City and Banks discriminated against it in the sale of property in contravention of Article I, Section 17 of the Illinois Constitution. The defendants have moved to dismiss these counts, arguing that the provision is inapplicable because the plaintiff does not allege that the defendants own the property at issue in the case.

 We find these counts should be dismissed, but on a different ground: the plaintiff has failed to bring an action under the Illinois Human Rights Act, 775 ILCS 5/1–102, ("IHRA"), which is the exclusive remedy for discrimination claims arising under Section 17 of Article I of the Illinois Constitution. *See Baker v. Miller*, 159 Ill.2d 249, 201 Ill.Dec. 119, 121–27, 636 N.E.2d 551, 553–59 (1994) (holding IHRA exclusive remedy for employment discrimination claim arising under Section 17); *Williams v. Naylor*, 147 Ill.App.3d 258, 100 Ill.Dec. 912, 915, 497 N.E.2d 1274, 1277 (1986) (holding IHRA exclusive remedy for housing discrimination claim arising under Section 17); *see also Walker v. Woodward Governor Co.*, 631 F.Supp. 91, 95 (N.D.Ill.1986) (holding that IHRA exclusive remedy for enforcement of Section 17 rights). The plaintiff should have brought a charge of discrimination under the IHRA to the Illinois Department of Human Rights ("the Department") within 180 days of the alleged violation. 735 ILCS 5/7A–102 (1995). The Department would then have investigated the charged discrimination and issued a report. If there was substantial evidence of a civil rights violation, the Department would have designated an attorney to handle the claim through conciliation or by filing a complaint with the Illinois Human Rights Commission. This is the proper administrative remedy for plaintiff's claimed discrimination in the sale of property; when that remedy was exhausted, Abierta could then seek administrative review in the state courts. *See Peters v. Fansteel, Inc.*, 736 F.Supp. 198, 201 (N.D.Ill.1990). Accordingly, the plaintiff's claim for relief directly under Article I, Section 17 must be dismissed, and we grant defendants' motion to dismiss Counts XVII and XVIII.

### CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss Counts XVII and XVIII is

granted. Defendants' motion to dismiss the remaining counts, Counts I through XVI, is denied.