In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-1878

HAROLD HILL,

*Plaintiff-Appellee,*

*v.*

CORDELIA COPPLESON, personal representative
of MICHAEL ROGERS,

*Defendant-Appellant.*

————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:06-cv-06772—**Amy St. Eve**, *Judge.*

————————

ARGUED OCTOBER 28, 2009—DECIDED NOVEMBER 22, 2010

————————

Before RIPPLE, WILLIAMS and TINDER, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Over a decade after being
convicted of sexual assault and homicide, Harold Hill was
exonerated by DNA evidence. Hill filed suit against the
City of Chicago, a number of its police officers, and
Michael Rogers, an assistant state's attorney, alleging
various constitutional violations, including a claim that
several detectives and Rogers had coerced him to falsely
confess to the crimes in violation of the Fifth Amendment.

Rogers filed a motion for summary judgment asserting that he was immune from suit because of his prosecutorial status. The district court rejected this argument, and Rogers appeals. Because we cannot resolve the immunity issue without resolving disputed questions of fact regarding Rogers's role in this case, we dismiss the appeal for lack of jurisdiction.

## I. BACKGROUND

On October 14, 1990, Kathy Morgan was sexually assaulted, murdered, and left in an abandoned building in Chicago. The building and Morgan's body were then set on fire in an apparent attempt to hide the crimes. Homicide detectives from the Chicago Police Department's Area 3 Violent Crimes Division investigated Morgan's murder but were unable to find the assailants.

On March 20, 1992, Harold Hill (who was 18 years old at the time) was arrested on unrelated charges. During the follow-up investigation on the unrelated charges, Hill was taken to Area 3, where he met with Detectives Kenneth Boudreau and John Halloran. Boudreau and Halloran took Hill to an interrogation room, where he was handcuffed to a ring on the wall. They began questioning Hill about whether he knew of any other crimes in the area. The discussion eventually turned to the Morgan homicide, and Hill denied any involvement. According to Hill, the detectives became very aggressive and repeatedly accused him of committing the crime, even going so far as to scream loudly directly into his ear that "you know you did it." Hill contends that when Halloran and Boudreau

became frustrated with his denials, they resorted to physical attacks, including grabbing his shoulders and violently shaking him, slapping him across the face, and punching him in his chest and ribs.

Hill contends that, after hours of questioning and physical attacks, he became desperate to appease the detectives and decided to make up a story about how he had heard that two men named "Pete" and "Junior" were responsible for the crimes. Hill states that after several more hours of questioning, the detectives presented him with two photographs depicting two men whom Hill did not recognize: Dan Young and Peter Williams. Hill maintains that, out of fear of further abuse, he told the detectives that he believed that the men in the pictures were Morgan's assailants.

At some point, the detectives called Assistant State's Attorney ("ASA") Michael Rogers to the police station to take Hill's confession, although the parties dispute the timing of Rogers's arrival. Rogers claims that he went to the station after Hill had already implicated himself in the crimes by confessing to the detectives. Hill maintains that he did not confess before Rogers arrived at the station; to the contrary, he only told the detectives that he was prepared to confess, but did not confess until his meeting with Rogers. According to Hill, when Rogers entered the interrogation room, Hill changed his mind about confessing and instead reasserted his innocence, telling Rogers that he had not been involved in Morgan's sexual assault or murder and that he had no knowledge of the crimes. Hill states that Rogers ignored his pleas of innocence and

began pressuring him to admit some involvement in the crimes by repeatedly asking Hill if he was "ready to confess." Apparently frustrated by Hill's refusal to confess, Rogers then left the room, at which point Boudreau reentered and again verbally and physically attacked Hill. Shortly thereafter, Hill agreed to confess for the second time, and Rogers returned to the interrogation room.

Hill states that Rogers, Boudreau, and Halloran together concocted a story that Hill, Young, and Williams had conspired to sexually assault and kill Morgan after meeting her at a party. According to Hill, Rogers fed him several details about Morgan's murder to assist in his written confession, which was prepared by Rogers and initialed by Hill. At 12:20 a.m. on March 22, 1992—twenty-six hours after his arrest—Hill agreed to give a court-reported statement. Hill contends that Rogers coached him during his statement by asking him leading questions, whispering the answers to other questions under his breath when Hill "didn't know certain answers", and mouthing to Hill details of the crime such as the color and type of clothing Morgan was wearing the night she was murdered. Rogers vehemently denies Hill's claims and states that he only interacted with Hill briefly and for the limited purpose of approving the criminal charges and questioning him while the court reporter recorded his confession. Hill was ultimately charged with Morgan's sexual assault and murder.

Over the next two days, detectives arrested Young and Williams. Both men denied knowing each other or Hill, and both initially denied any knowledge of or involvement

in the Morgan crimes. According to the testimony of Young and Williams, their protestations of innocence also subjected them to physical abuse at the hands of the detectives (including Halloran and Boudreau, who arrested and questioned Williams). Eventually, the detectives were able to secure written confessions from Young—who was mentally retarded and incapable of reading or writing anything other than his own name—and Williams—who had been incarcerated on the day of Morgan's murder. Young was charged with Morgan's sexual assault and murder on the basis of his confession. Charges were never brought against Williams because the detectives discovered (after securing a detailed confession from him) that he had actually been in jail when the crimes were committed and therefore could not have been involved.

In September 1994, Hill went to trial on the sexual assault and murder charges. The government introduced Hill's confession during its case-in-chief, but Hill maintained his innocence and testified that his confession had been coerced. The jury convicted Hill on both counts, and he was sentenced to life in prison. Over a decade later, Hill and his remaining codefendant Young (who had been convicted in a separate trial) were exonerated after DNA testing revealed that neither had contributed DNA to any piece of evidence recovered from the crime scene. Hill and Young moved for a new trial, after which their convictions were vacated by agreement with the state's attorney's office.

Hill brought this suit against the City of Chicago, present and former Chicago homicide detectives including Halloran and Boudreau, and ASA Rogers in January 2007.

Hill asserted that the coercion of his false confession was a violation of the Fifth Amendment. He also brought a civil conspiracy claim under 42 U.S.C. § 1983, alleging that the defendants had conspired to coerce his confession. The defendants moved for summary judgment on various grounds. For his part, Rogers asserted that he was entitled to absolute immunity because his actions were taken in connection with his prosecutorial duties, and alternatively, that he was entitled to qualified immunity because his actions did not violate Hill's constitutional rights. The district court determined that Rogers, Halloran, and Boudreau were not entitled to summary judgment on Hill's Fifth Amendment forced confession claim and his § 1983 claim. Rogers now appeals the district court's denial of summary judgment.[1]

## II. ANALYSIS

We begin by addressing the issue of jurisdiction. On appeal from a denial of summary judgment on an assertion of absolute or qualified immunity, "we evaluate the record de novo and determine whether we can decide each immunity question without resolving any disputed

---

[1] During the pendency of this appeal, Rogers died. Pursuant to Federal Rule of Appellate Procedure 43(a)(1), we issued an order staying the appeal pending appointment of a personal representative for Rogers's estate. The stay was lifted on May 6, 2010 upon our granting of the parties' joint motion to substitute Rogers's personal representative, Cordelia Coppleson, as party-defendant. We refer only to Rogers in the opinion.

questions of fact. If we find that we cannot, then we lack jurisdiction over the appeal of that question." *Hansen v. Bennett*, 948 F.2d 397, 399 (7th Cir. 1991) (citation omitted); *see Johnson v. Jones*, 515 U.S. 304, 319-20 (1995) ("[A] defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial."). Conversely, if we are able to decide either immunity question based on undisputed facts, then we do have jurisdiction. *Leaf v. Shelnutt*, 400 F.3d 1070, 1078 (7th Cir. 2005) ("[W]hen the outcome of a question of law—for instance, whether a particular action violates the Constitution—does not depend on the outcome of a disputed factual question, we may review whether the district court correctly determined the question of law that it considered.").

Here, the district court determined that Rogers was not entitled to summary judgment based on prosecutorial immunity because genuine issues of fact remained as to Rogers's involvement in the coercion of Hill's confession. Among the evidence the district court considered was the discrepancy about whether Hill confessed to the crimes before or after Rogers arrived at the police station, Hill's testimony that he initially told Rogers that he did not want to confess, and Hill's assertions that Rogers had fed him additional details about the murder to assist Hill during his confession. The district court found that this evidence was sufficient to create a genuine issue of material fact with respect to the extent of Rogers's personal involvement in the coercion of Hill's confession.

Rogers now asks this court to reassess whether he is entitled to absolute or qualified immunity, both of which depend on issues of fact that the district court has correctly determined are in dispute. With respect to absolute immunity, a prosecutor is absolutely immune from § 1983 civil liability when he "acts as an advocate for the state but not when his acts are investigative and unrelated to the preparation and initiation of judicial proceedings." *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). The question of whether Rogers was acting in the role of an advocate or an investigator depends in part on whether probable cause for Hill's arrest existed before Rogers's arrival at the police station. *See Buckley*, 509 U.S. at 274 ("A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested."). And the probable cause question turns on a disputed issue of fact concerning Hill's confession, which was the only piece of evidence implicating him. If Hill confessed to the crimes before Rogers arrived, then the detectives likely did have probable cause to arrest him, which counsels toward a finding that Rogers was acting in a purely prosecutorial role for which he would be entitled to absolute immunity. On the other hand, a determination that Hill did not confess until his meeting with Rogers would indicate that Rogers was likely acting in the role of an investigator searching for more evidence, activities to which only the qualified immunity analysis applies. As the district court found, whether Rogers arrived before Hill confessed is a disputed issue of fact that requires making credibility determinations and weighing the evidence, which the court

could not do on summary judgment. Because we cannot resolve the absolute immunity question without resolving this factual dispute, we do not have jurisdiction over Hill's appeal of that issue.[2]

Rogers's qualified immunity claim also depends on disputed issues of fact. A prosecutor is entitled to qualified immunity if his or her "actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Viilo v. Eyre*, 547 F.3d 707, 709 (7th Cir. 2008) (citation and internal quotation marks omitted). In essence, Rogers's argument is that there

---

[2] Rogers's conclusory assertion that Hill had confessed prior to Rogers's arrival at the station is meritless. Rogers contends that Hill's agreement to confess is tantamount to a confession itself. But this contention is not supported by the Supreme Court of Illinois's longstanding definition of "confession," which is "a direct acknowledgment of guilt on the part of the accused, either by a statement of the details of the crime or an admission of the ultimate fact." *People v. Allen*, 107 N.E.2d 826, 830 (Ill. 1952)(citing *People v. Nitti*, 143 N.E. 448, 455 (Ill. 1924). Hill's statement that he intended to confess did not contain any details of the crimes, nor was it an admission of the ultimate fact. *See also United States v. Gilbertson*, 435 F.3d 790, 798 (7th Cir. 2006) (citing with approval the Third Circuit's definition of "confession" as "a statement admitting or acknowledging all facts necessary for conviction of the crime") (citing *Gov't of Virgin Islands v. Harris*, 938 F.2d 401, 409 n.5 (3d Cir. 1991)). Without more, Hill's statement that he would confess is insufficient to create probable cause, and accordingly, cannot be the basis for finding that Rogers was acting as an advocate rather than an investigator during his meeting with Hill.

was no legitimate basis for a finding that Rogers coerced Hill; thus, Hill was not deprived of a constitutional right. But this argument faces the same problem as Rogers's appeal based on absolute immunity in that its resolution depends on facts that the district court has properly determined to be in dispute: the extent to which Rogers was involved in coercing Hill's confession. And because we cannot determine whether Rogers coerced Hill's confession without resolving the discrepancies between Hill's and Rogers's accounts of the events, we lack jurisdiction to consider Rogers's qualified immunity claim on interlocutory appeal. *See White v. Gerardot*, 509 F.3d 829, 835 (7th Cir. 2007) ("We do not have jurisdiction when, as here, all of the arguments made by the party seeking to invoke our jurisdiction are dependent upon, and inseparable from, disputed facts."); *Via v. LaGrand*, 469 F.3d 618, 624 (7th Cir. 2006) ("[U]nder *Johnson* and its progeny, this court lacks interlocutory jurisdiction to review the record to determine whether the district court erred in finding that a genuine issue of material fact exists.").

## III.  CONCLUSION

Because we lack jurisdiction, the appeal is DISMISSED.